(90 App. Div. 596.)

PEOPLE ex rel. KEYES v. MILLER, State Comptroller.

(Supreme Court, Appellate Division, Third Department. January 6, 1904.)

1. TAXATION—SALE OF LAND—REDEMPTION—UNOCCUPIED LAND.

    Where land sold for taxes consisted of a part of a large tract owned by a club, and used as a game preserve, and was kept in a wild, uncultivated state, under the supervision of mere care takers, who looked after the entire tract, the land so sold was not occupied, within Tax Law 1896, p. 844, c. 908, § 137, authorizing an occupant to redeem from a sale of the land for taxes, and section 134, p. 842, requiring notice to redeem to be served on the person in actual occupancy of the land.

    Smith and Chester, JJ., dissenting.

Certiorari by the people, on relation of Marquis L. Keyes, against Nathan L. Miller, as State Comptroller, to review the latter's determination of an application to redeem certain lands sold to relator for nonpayment of taxes. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Griffin & Ostrander, for relator.

John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for defendant.

PARKER, P. J. The relator purchased at a tax sale by the State Comptroller in 1900 lot 6, township 6, Moose River tract, county of Herkimer; being a tract of land consisting of 570 acres. It was assessed and sold for taxes as nonresident lands. The time for redemption by the owner expired in December, 1901, and a conveyance was executed by the Comptroller to the relator on March 6, 1903. On May 23, 1903, the application of the Adirondack League Club to redeem such lands as an occupant thereof, under the provisions of section 137 of the tax law (Laws 1896, p. 844, c. 908), was granted by the Comptroller. No notice to redeem, as provided for by section 134, p. 842, of such law, had been served by the relator. He claims, however, that the said lands were not occupied, within the provisions of such section 134, by the said club, or by any one whomsoever, and he has sued out this certiorari to review the decision of the Comptroller upon that question.

There are no facts claimed by either party which are disputed. The single question presented to us is whether the club in December, 1901, had such an actual possession of the tract so sold and conveyed to the relator as is required by the section aforesaid.

The Adirondack League Club owned some 90,000 acres of land as a forest preserve, and the tract in question was a part thereof. The club had purchased the tract in 1890, and since then had used it for the purposes for which it was purchased, and as it used the rest of its wild and uncultivated land, to wit, as a game preserve, and over which its members could hunt and fish. Trails were cut through the forest across such lot. A boat landing was built upon the shore of a lake that was partly in this lot—just how it was built, does not appear; and, possibly, although it does not distinctly appear to be so, notices warning all persons from trespassing upon the lot, and that it was used as a private park, were posted upon the lot. I say that this fact does not distinctly appear, because the affidavits seem to be to the effect that the notices were posted "along the lines of the whole of said preserve," meaning that they were posted along the boundary lines of the whole 90,000 acres; and, if this lot is in the middle of that tract, there may not have been any notice within miles of this lot. And this lot was used by the club for the same purposes, and was cared for by the same care takers and in the same manner, that the rest of such 90,000 acres were used and cared for. Does such a use and possession constitute the actual occupancy which the statute requires?

It is urged on the part of the club that it is the only possession of the many lots included within their large preserve which it is possible for them to take, and that an actual pedis possessio of each of such lots is inconsistent with the purpose for which they were obtained. That seems to be so. The object of their ownership of the lands is to preserve them in as wild and unreclaimed a condition as possible, and an actual occupation of them, or such treatment of them as is declared in section 370 of the Code of Civil Procedure to amount to a possession and occupancy, would operate at once to defeat the very purpose of their use. There are many different lots within the boundaries of this 90,000-acre tract of which the club, because of its ownership thereof, has the constructive possession, but of which no one can be said to have the actual possession, and I am of the opinion that the lot in question was one of them.

The statute in question (Laws 1896, p. 842, c. 908, § 134) requires that the person upon whom notice must be served shall be in the "actual occupancy" of the tract or parcel of land which the Comptroller had sold; and it seems to me that, in the very nature of the use to which the club put its land, it cannot have such an occupancy, nor can any of its servants have it, unless, perhaps, it be of some small parcel thereof upon which a permanent residing place has been created for him. Although the occupancy here is not invoked for the purpose of establishing an adverse user, yet the definition given in section 134 is at least as precise and explicit as was the word "possession," which the Code defined. It must be the actual occupant upon whom the notice is to be served, and all the cases in which this phrase is defined or explained seem to be adverse to the claim which the Adirondack League Club here makes. People ex rel. Marsh v. Campbell, 67 Hun, 590, 22 N. Y. Supp. 458; Id., 143 N. Y. 338, 38 N. E. 300; Churchill v. Onderdonk, 59 N. Y. 134; Thompson v. Burhans, 79 N. Y. 98, 99.

There was nothing in the case at bar to indicate to the relator that the lot in question was in the "actual occupancy" of any one, and I am of the opinion that the determination of the Comptroller was erroneous, and should be reversed. All concur, except SMITH and CHESTER, JJ., who dissent.