CLARK et al. v. KIRKLAND.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1909.)

1. TAXATION (§ 338*)—ASSESSMENT—VALIDITY.
   An assessment of lands, not having been made to the resident owner, as required by Tax Law (Laws 1896, p. 801, c. 908) § 9, was void.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 338.*]

2. TAXATION (§ 338*)—ASSESSMENT—RESIDENT OWNER—TENANTS IN COMMON.
   Where one of the three tenants in common of land was a resident of the tax district, the land, or at least his undivided interest, should have been assessed to him as resident owner, under Tax Law (Laws 1896, p. 801, c. 908) § 9.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 573, 577; Dec. Dig. § 338.*]

3. TAXATION (§ 340*)—ASSESSMENT—NONRESIDENT LAND.
   The assessment of land as nonresident land was void in toto; there having been a resident owner of an undivided interest, to whom, under Tax Law (Laws 1896, p. 801, c. 908) § 9, his interest, at least, should have been assessed.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 573; Dec. Dig. § 340.*]

4. TAXATION (§ 340*)—ASSESSMENT OF LAND—OCCUPANCY—"OCCUPANT."
   A tract of 250 acres of timber land was occupied, within Tax Law (Laws 1896, p. 801, c. 908) § 9, allowing land to be assessed as nonresident land only where there is not an owner or "occupant" of it residing in the tax district, where the owners had marked its exterior lines by blazing trees, had made roads, cut and skidded a large quantity of logs, drawn away part of them, and left a larger quantity on the skids, and, at the time the assessors were on their annual rounds, were erecting on it a substantial shanty large enough to house them and their bark peelers.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 340.*
   For other definitions, see Words and Phrases, vol. 6, pp. 4904–4906.]

5. TAXATION (§ 770*)—TAX DEEDS—CONCLUSIVENESS.
   Assessing land as nonresident, when there was a resident owner or occupant, to whom by Tax Law (Laws 1896, p. 801, c. 908) § 9, it should be assessed, is a defect affecting the jurisdiction on constitutional grounds, within sections 131 and 132, making a tax deed after two years conclusive of regularity of all proceedings, except as to "any defect in the proceedings affecting the jurisdiction on constitutional grounds."
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 770.*]

Appeal from Equity Term, Lewis County.

Action by John F. Clark and another against James Kirkland. From a judgment for plaintiffs after a decision on the merits, defendant appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before, McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Albert T. Wilkinson, for appellant.
William S. Mackie, for respondents.

SPRING, J. The action is to remove an alleged cloud upon the title of a tract of land in the possession of the plaintiffs, and wh.ch they claim to own. The premises in controversy comprise the northerly one-third of lot No. 71 of township 13, Boylston Purchase, in the town of Osceola, county of Lewis, and the title of each party is based upon tax deeds, and the priority and validity of these conflicting titles are the subject-matter of the litigation.

Frank Kumrow, Edward Cole, and James M. Finch, by deed bearing date November 15, 1900, acquired title by purchase of all of said lot 71 from one Sperry, who owned the same by virtue of several tax deeds. These grantees went into possession of this land in December, 1900, and remained in possession until August 26, 1901. The land was covered with growing timber, and these owners caused it to be surveyed and the boundaries identified by blazing the trees along the lines established by the survey. They made roads, cut down some of the trees, sawing them into logs and placing them on the skids, and during the winter drew to mills sufficient for nearly 100,000 feet of lumber, and left à large quantity of logs suitable for lumber upon the skids, intending to draw them away. In June, 1901, they drew lumber on the tract, erected a shanty about 10 by 14 feet and about 10 feet in height with a roof of double boards and with a board floor. This shanty was intended to be used primarily to house the bark peelers the owners expected to engage. A stove was set up, and dishes, cooking utensils, and beds provided. All this work was done and improvements made on the southerly part of the lot, not extending to the northerly one-third, although there was no division between the parts. They owned the entire lot in common. There was not much use made of the shanty, although the dishes and stove remained there, and very little work was done after 1901 until 1906. Occasionally one of the owners occupied the house overnight or cooked a meal in it, and it remained on the lot, although somewhat dilapidated, until 1906 anyway; and there was certainly no intention on the part of the owners to abandon the premises.

By warranty deed, bearing date August 26, 1901, Kumrow, Cole, and Finch conveyed to the plaintiffs the northerly one-third of this tract of land. The deed was executed and acknowledged by Kumrow and Cole and delivered to the plaintiffs the day of its date, although not executed by Finch and his wife until June, 1903. After the execution of this deed, the original co-tenants continued in the possession of the southerly two-thirds of the tract. Immediately after their purchase the plaintiffs caused the dividing line between the two parcels to be surveyed and located. They entered upon the lot, fixed upon a site for a sawmill, and were making preparations for cutting and sawing the timber, when they were interrupted by an

injunction order, in an action against them and Kumrow and Cole, which was settled in June, 1903. In the fall of 1906 a substantial log house and log barns were erected on the northerly tract by the plaintiffs, and they placed a boiler and engine on the lot and commenced to cut and skid the logs, and the progress of the work was again interrupted by an injunction order in an action commenced by the defendant. The plaintiffs have paid the taxes assessed against the land and have continued in the actual possession of their premises since their purchase in 1901.

It is claimed that there were defects in the tax deeds upon which the title of the plaintiffs rests; but these defects are mere irregularities, and the statute of limitations ran against them long before the commencement of this action.

At the outset it may be well to note that the learned court below has found all the facts, which are substantially without dispute, tending to establish that the grantors of the plaintiffs were in the actual occupancy of the lot 71 when the assessors were making the assessment for that year. He, however, apparently with much reluctance, seems to conclude that he is precluded by the case of People ex rel. Keyes v. Miller, 90 App. Div. 596, 86 N. Y. Supp. 189, from holding that the occupancy was sufficient to authorize the assessment to be made to these owners. We do not concur in this conclusion.

The only object in reciting in detail the acts of occupancy and ownership exercised by the plaintiffs and their grantors is because of their bearing upon the validity of the defendant's tax title, which we will now consider.

On the 10th of November, 1903, the defendant obtained a tax deed from the county treasurer of Lewis county purporting to convey to him the whole of lot 71, and this deed was recorded three days later. The sale ripening into this deed was made in October, 1902, and the land was sold as nonresident land for unpaid taxes for the year 1901. This action was commenced March 8, 1907, and the statute might be a bar to its prosecution (sections 131 and 132 of the tax law [Laws 1896, p. 841, c. 908]), unless the deed is invalid because of some jurisdictional defect, as prescribed in section 132.

The statute governing assessments in 1901 provided:

"Sec. 9. Place of Taxation of Real Property.—When real property is owned by a resident of a tax district in which it is situated, it shall be assessed to him. When real property is owned by a resident outside the tax district where it is situated, it shall be assessed as follows: (1) When the property is occupied it must be assessed to the occupant. (2) If the occupant resides out of the tax district, or if the land is unoccupied, it shall be assessed as nonresident, as hereinafter provided by article two."

The gist of the tax law is that land must be assessed to the resident, and the tax levy creates a personal liability against him. If the land is owned by one not a resident of the tax district, or if it is unoccupied, or if the occupant does not reside in the tax district, it must be assessed as nonresident land, in which event there is no personal liability for the payment of the tax imposed; but the

lien is upon the land. A failure to assess the lands of a resident to the true owner renders the assessment void, and the defect is jurisdictional, and hence not curable by subsequent enabling legislation. Hagner v. Hall, 10 App. Div. 581, 42 N. Y. Supp. 63, affirmed on opinion below, 159 N. Y. 552, 54 N. E. 1092; Rowley v. City of Poughkeepsie, 106 App. Div. 258, 94 N. Y. Supp. 454; Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391; Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932.

In the first case cited Justice Cullen exhaustively and with much lucidity reviewed the statutes governing the assessment of real property and the distinction in the assessment of resident and nonresident lands and the effect of a departure from the course prescribed by the statute in levying the assessment. He said, at page 585 et seq. of 10 App. Div., page 66 of 42 N. Y. Supp.:

"Until the year 1850 the tax in the case of the lands of residents could never become a lien on the land. The sole method of enforcing it was from the personal property of the owner. If the tax of one year was unpaid, it was added to the tax of the next year and attempted to be collected with it out of personal property. Thus taxes in default became cumulative, but not charged on the land. Taxes in the case of lands of nonresident owners were charges on the land and created no personal liability against the owner. In 1850, and afterwards in 1855, the system as to unpaid taxes of residents was changed. When the tax was in default, the next year it is to be levied and returned in the same manner as is the case with lands of nonresident owners. Still, in my opinion, this has not changed the effect of the proceeding. It is essentially a proceeding to create a debt against an individual. The individual is the primary debtor, and the land is only in the nature of surety liable for his default. So it has been repeatedly held in this state that, unless resident lands are assessed to the true owner or to the occupant, the tax is void."

By the enforcement of the tax levy, the owner of the property assessed is deprived of some part of his property without his consent, and the requirements of the statute in their substance must be strictly complied with. Clason v. Baldwin, 152 N. Y. 204, 210, 46 N. E. 322; Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391.

Where the land of a resident is assessed as nonresident, the rule adverted to applies in its full scope. The resident is entitled to notice of the various proceedings and has an opportunity to be heard, and of this important right he may be deprived if the land is placed upon the roll as nonresident real property. The pertinence of this question to the present case lies in the fact that in 1901, when the tax was imposed, Kumrow, one of the tenants in common of lot 71 resided in the town of Osceola, which is the taxing district where the lot is located. He had resided in that town 30 years, and the assessors knew of that fact and were advised of his ownership of the land in common with Cole and Finch, who were nonresidents of the district. Because of their nonresidence the premises were assessed as nonresident lands.

It seems to us the land should have been assessed to the resident owner. It is the purpose of the taxing law to reach the individual owner primarily. The assessment of property as nonresident lands is the last resort. Before that course is permissible, two or three facts are essential. There must not be a resident owner; and, if there is an occupant, he must reside out of the district. It is apparent therefore that the lawmakers were hedging about the assessment of lands

in order to protect the owner by an assessment which would insure him all the notices and safeguards which are required in the tax law. If the owner, who was a nonresident, saw fit to leave his lands unoccupied, then the exigencies of the situation, as the law then stood, required that the land be assessed in the nonresident column.

Kumrow, as tenant in common, owned an undivided part of the whole lot in 1901, when the assessment was made. There was no separation of his ownership. It extended over the whole tract. By virtue of this ownership his possession was the possession of his co-tenants —his ownership was for their common benefit. He could not acquire a tax title individually against Finch and Cole. Whatever title passed by such a deed would inure to the advantage of all three of the owners. He could not accept a title to their prejudice. Burhans v. Van Zandt, 7 N. Y. 523.

On the other hand, whatever expenditures he necessarily made for the benefit or protection of their common property was a lien upon that property, and his co-tenants were liable to reimburse him their aliquot portion thereof. An assessment against him was an assessment against them all, and a payment of the tax by him was for their common benefit, and he was protected by their joint interest in the premises. I am unable to find any authority on this proposition, and the conclusion I have reached is deduced from the manifest purpose of the tax law to assess the lands to the individual whenever possible, and from the pervasive title of a tenant in common in actual possession and the peculiar relation which it creates. In any event, the undivided one-third owned by Kumrow should have been assessed to him. He was not a nonresident. Even if the fact that his co-owners were nonresidents may have compelled their interests to be put in the nonresident column, surely his one-third must not be subjected to any such assessment. The right to redeem by the owner of an undivided tract of land is authorized by the tax law (sections 127 and 128), indicating the purpose to shield the title of every person from sale for nonpayment of taxes, unless he is remiss. If the assessment was invalid in part by reason of the omission to assess the undivided one-third to Kumrow, it vitiates the entire assessment. Saranac L. & T. Co. v. Roberts, 195 N. Y. 303, 311, 88 N. E. 753.

It seems to me that Kumrow, Finch, and Cole were occupants of this land at the time the assessment was made which is the origin of the defendant's title. They had done all the acts of ownership of which this forest land was susceptible. They had marked their exterior lines. They had cut and skidded logs and drawn off a large quantity, and left a larger quantity on the skids. In the month of June, at the very time the assessors were on their annual rounds, they were erecting a substantial shanty of sufficient size to house them and their bark peelers. Their occupancy was open and notorious for possession of land of that character.

Section 134 of the tax law, after providing for the one-year notice of redemption, thus defines "occupant" and "occupancy":

"The term 'occupant' shall be construed to mean a person who has lawfully entered upon the land so occupied, and is in possession of the same to the exclusion of every other person. And the term 'occupancy' shall mean the actual

.lawful and exclusive use and possession of such lands and premises by such an occupant."

Kumrow and his co-owners were in the lawful and exclusive use and possession of all of lot 71 during the whole period the assessment was in process of making in the year 1901. I think the case is distinguishable from People ex rel. Keyes v. Miller, 90 App. Div. 596, 86 N. Y. Supp. 189, relied upon by the appellant and referred to by the learned court below. In that case the Adirondack League Club owned a tract comprising 90,000 acres of Adirondack forest land, using it for a game preserve, so that the occupancy must have been very intermittent and very difficult to identify. There were 570 acres in this tract sold as nonresident land for the nonpayment of taxes, and no notice to redeem was served; the relator contending the premises were not occupied, and the court upheld this contention. There were some trails through the forest across this lot, and there was a boat landing extending on part of the lot, and notices were posted along in some places on the preserve notifying people the land was a private park, and there were a few caretakers to look after the whole preserve. The tract sold was not separated by any visible boundaries or marks from the great preserve of which it formed an indistinguishable part. The whole tract was an enormous one, and occupancy for a game preserve of an extensive area of this kind is far different from cutting the trees, lumbering, skidding logs, and building a shanty on a small tract of 250 acres whose boundaries are marked according to the custom of the country. While there is nothing in the statute defining the character of the occupancy in order to require notice to be served, except that it must be actual, lawful, and exclusive (People ex rel. Turner v. Kelsey, 180 N. Y. 24, 26, 72 N. E. 524), it is fair to assume that there must be some open, tangible evidence of the occupancy and of its extent. What might constitute occupancy within the purview of the statute in one case might fall short of the requirement in another. A tract of land covered with the virgin forest cannot be cultivated. We would not expect the owner to erect upon it a commodious dwelling house, nor to inclose it by a fence. Its boundaries, however, must be defined and capable of ascertainment by one familiar with the methods in vogue for indicating boundary lines in the territory where the land is situate; and we think the requirements have been fully complied with in order to establish occupancy.

The statute provides that, "if the occupant resides out of the tax district," the land "shall be assessed as nonresident," implying that even an occupant may not be in the visible possession of the property. The tendency of the authorities is to construe statutes of this kind liberally in favor of the occupants or owners. People ex rel. Turner v. Kelsey, 180 N. Y. 24, 26, 72 N. E. 524; Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391, and other cases cited supra.

In each of the authorities cited by the appellant's counsel there was obviously no occupancy of the entire tract, and we do not regard any of them applicable to the condition of affairs contained in the record before us.

No notice to redeem was served in this case, which the statute requires where the premises assessed are occupied. I am inclined

to think that the occupancy of the plaintiff after the injunction order was served upon him was not sufficient to entitle him to this notice, and therefore I do not discuss that subject.

The appellant claims that the two years' statute of limitations provided for in section 131 of the tax law has run against the plaintiffs' cause of action. This section and section 132 are to be construed together. Adirondack League Club v. Keyes, 122 App. Div. 178, 106 N. Y. Supp. 963; People ex rel. McGuinness v. Lewis, 127 App. Div. 107, 111 N. Y. Supp. 398. The latter section enacts that a tax deed after the lapse of two years from its recording shall be conclusive evidence of the regularity of all the proceedings, except for certain causes enumerated, one of which is "by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds," and that is the only exception pertinent to this case, and its construction has perplexed the courts. See cases last cited.

For many years there had been a provision in the statute to the effect that, after the expiration of two years for redemption, the conveyance should be "conclusive evidence" that all the proceedings leading up to the culmination of the tax title were regular. The courts in construing that provision held that it did not include jurisdictional defects. Joslyn v. Rockwell et al., 128 N. Y. 334, 28 N. E. 604; Hagner v. Hall, 10 App. Div. 581, 42 N. Y. Supp. 63. And so held in case of a local statute making the limitation 15 years. Ensign v. Barse et al., 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401.

The clause "upon constitutional grounds" was embodied in the law upon the·compilation of the statutes into Tax Law (chapter 908, Laws 1896) § 132. The tendency of the courts in construing this clause has been to the effect that, where one has been deprived of his land by reason of a jurisdictional defect in the assessment, it is within the exception referred to. People ex rel. McGuinness v. Lewis, 127 App. Div. 107, 111 N. Y. Supp.·398; People v. Ladew, 189 N. Y. 355, 82 N. E. 431. In the McGuinness Case, supra, the lands of a resident were sold on an assessment of nonresident lands, and it was held the statute of limitations did not apply. In People v. Ladew the notice to redeem was not served on the occupant of the land assessed, and the court held this curative statute was not effective, as the deed was wholly void.

Assessment to an occupant or owner is the very essence of the taxing statute. Failure to comply with this provision might result in depriving him of his property without due process of law, and a statute which assumes to grant any such power is violative of the Constitution. Joslyn v. Rockwell et al., 128 N. Y. 334, 28 N. E. 604; Matter of Douglass v.·B'd of Sup'rs, 172 N. Y. 309, 314, et seq., 65 N. E. 162.

Judge Cooley, in his work on Taxation, at page 266, after commenting upon the importance of an opportunity to the person assessed to be heard, adds:

"We should say that notice of proceedings in such cases and an opportunity for a hearing of some description were matters of constitutional right."

If Kumrow and his co-tenants were occupying lot 71 within the meaning of the taxing statute when the assessment was made, the property should have been assessed to them, and placing it in the nonresident column was a jurisdictional defect, and we think the statute has not run against the plaintiffs.

The appellant contends that the defects which were jurisdictional "upon constitutional grounds" refer only to jurisdiction of the person and of the land itself. In this case there is no claim of any exercise of any authority over the person by the assessors. If, aside from this question, the exception only relates to whether the land is in the taxing district, it is of no significance or moment whatever. The assessors always know the compass of their taxing district. The plaintiffs or their grantors were always in possession, actual or constructive, even though they may not have been occupants within the taxing statutes. We think they were not therefore called upon to give any heed to the running of the statute of limitations. People ex rel. McGuinness v. Lewis, supra; Joslyn v. Rockwell et al., 128 N. Y. 334, 339, 28 N. E. 604; People v. Ladew, 189 N. Y. 355, 360, 82 N. E. 431.

True the plaintiffs have taken the initiative in this case. Apparently they were compelled to attack the validity of the defendant's deed, for their lumbering was restrained by injunction in an action commenced by the defendant.

We concur with the learned trial judge in what he has so well said on the character of the possession of the plaintiffs and their grantors, and the effect to be given to it, and also as to the other questions discussed in his opinion.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur; KRUSE and ROBSON, JJ., in result.