(90 Misc. Rep. 432)

### NICHOLS et al. v. KELLAS.

(Supreme Court, Trial Term, Franklin County. June 12, 1915.)

TAXATION ⬤⟶701—TAX TITLES—NOTICE TO "OCCUPANT."

    Tax Law (Consol. Laws, c. 60) § 134, declares that if any lot or tract of land, sold for taxes by the comptroller, shall at the time of the expiration of one year given for redemption, be in the actual occupancy of any person, the grantee to whom it shall have been conveyed or the person claiming under him shall within one year from the expiration of the time to redeem serve a written notice on the person occupying the land either personally, or by leaving same at the dwelling house of the occupant, etc., stating the sale and conveyance, and that, unless the consideration be paid into the state treasury within six months for the benefit of the grantee, the conveyance shall become absolute. The statute further declares that the term "occupant" shall be construed to mean a person who has lawfully entered upon the land so occupied and is in

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

possession to the exclusion of others. The owner of a large tract of forest land built a summer camp thereon, which was at various times during the season between April and October occupied by himself and family, and was continuously occupied by his superintendent, who also visited it in the winter. *Held*, that though the owner resided in another city, yet as he had his property patrolled by guards and the boundaries were well marked, he was in actual occupancy, and a notice to redeem was necessary before a comptroller's deed could become absolute.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1407, 1409–1411; Dec. Dig. ☞701.

For other definitions, see Words and Phrases, First and Second Series, Occupant.]

Action by George L. Nichols and another, as executors and trustees under the last will and testament of Albert J. Milbank, deceased, against John P. Kellas. Judgment for plaintiffs.

Ellis J. Staley, of Albany (Cantwell & Cantwell, of Malone, of counsel), for plaintiffs.

Kellas, Genaway & Kellas, of Malone, for defendant.

BORST, J. This action was brought to cancel a tax deed given by the comptroller to certain lands of which the plaintiffs claim to be the owners. In 1902 the plaintiffs' testator acquired by purchase from the St. Regis Paper Company, for a consideration stated in the deed of $1,150, the title to the north four-fifths of lot 6 of Ward's subdivision of township 14, containing about 140 acres of land, the title to which property is traced back from the Paper Company to the state, which gave letters patent for these lands and others in 1850. In 1896, plaintiffs' testator purchased from the Everton Lumber Company for $2,000 three other parcels of land situate in townships 11, 12, and 15, Great Tract 1, Macomb's purchase, Franklin county, and northerly of and adjoining the parcel first noted. These four parcels of land, subdivided into lots, form a parallelogram and comprise in all about 1,128 acres of land. At or soon after the plaintiffs' testator acquired the property, he constructed a camp on the southerly half of lot 31 of said parcels, expending $5,000 or $6,000 in buildings, which consist of a main building, with seven or eight rooms, another building, with one bedroom and dressing room and bathroom, a building, known as the guide house, that would accommodate three or four guides, a stable, to accommodate four horses, an icehouse, with a capacity for about 40 tons of ice, and as a part of the icehouse there was a cooler room and storeroom. There was also a boathouse, with a capacity for three or four boats.

At the point where the buildings were located there was, at or shortly after the year 1903 and since, about 5 acres of cleared land, which extends down to the St. Regis river, which flows in a northerly and southerly direction through the property. This cleared land was used by plaintiffs' testator for a lawn and garden, all being under cultivation, partly plowed and partly seeded, and potatoes and vegetables and hay were raised thereon. About the time the plaintiffs' testator purchased the last parcels of property, he caused a survey to be made of the ex-

terior lines of the entire property, had trees blazed to mark where these lines were located, and caused notices to be posted and maintained every 40 rods on these lines and also at points where the trails and roads crossed the lines. These notices were printed on cloth about 11 by 16 inches in size with large letters reading as follows:

"Private Property

"All persons are forbid hunting, fishing, camping or trespassing upon these premises.                                    Albert J. Milbank, Owner."

In 1903 a description of the property was added to the notices as theretofore printed. Three small docks were maintained on the property on the river front, one near the camp, and one at the southwesterly corner of lot 41, where the river, which was some 4 to 6 rods in width, ran through or along that lot. Except for the cleared space of 4 or 5 acres around the plot, the entire plot was covered with forests. The property was in charge of a superintendent, who stayed on the property, making his home at the camp, from about the 1st of May in each year until the 25th or 26th of November, and then visited the camp each month from the latter part of November until the 1st of May, cutting ice in the winter to fill the icehouse. In the winter of 1895 and 1896 some lumbering was done upon lots 41 and 49 of the tract, and in the year 1903 the superintendent, with a gang of men, fought fires on those lots.

During the months of July, August, and September the camp was usually occupied by eight or ten people, including attendants to assist in doing the work, in addition to the superintendent. The property was patrolled to keep off trespassers and poachers. The attendants in season planted the garden and crops, painted and repaired the buildings, and acted as guides for those who might be at the camp. Trails were cut, walks cleared, and roads opened and cleared of obstructions. Occasionally the camp was occupied by its owners as early as June and as late as October, and at times was used by its owner to hunt upon in November. During the season boats were kept on the river for the use of the testator and his family and guests. Wood was cut from the lands for needed fuel. The testator's residence, during the period of his ownership of the property and up to the time of his death, which occurred May 23, 1912, was in New York City. By his will, which has been duly admitted to probate, the plaintiffs are trustees and owners in fee of the property.

The defendant in 1905 purchased, for $13.70, at a tax sale held by the state comptroller under default in payment of taxes made against lot 41 in 1903, 18 acres square in the southwest corner of lot 41, on which was located one of the boat docks before referred to. This land was about one-quarter of a mile from the camp and connected with it by a trail or road. At the same tax sale, the defendant also purchased, for $20.54, 54 acres of the northwest one-half of lot 49, which lay immediately south of the 18 acres. This sale was made for default in the payment of taxes assessed in 1903. Defendant took his deed to these parcels of land from the comptroller February 4, 1907, which he caused to be recorded in the clerk's office of Franklin county

March 26, 1907. At a tax sale held by the state comptroller in 1910, defendant purchased for $44.58 the whole of the west half of lot 49, 230 acres, and of the southwest one-quarter of lot 41, 145 acres, on default in payment of taxes under assessments of 1904 and 1908, and took a deed from the comptroller of his purchases on April 24, 1912, and recorded it in the county clerk's office of Franklin county on the 7th day of May, 1912.

[1] No question is made but that no notice to redeem has been served by the defendant pursuant to section 134 of the Tax Law. The defendant, however, contends that there was no such occupancy of the premises as to require such notice, and calls attention to the language in that section which reads:

"The term 'occupant' shall be construed to mean a person who has lawfully entered upon the lands so occupied, and is in possession of the same to the exclusion of every other person. And the term 'occupancy' shall mean the actual lawful and exclusive use and possession of such lands and premises by such an occupant."

Within the holdings in Clark v. Kirkland, 133 App. Div. 826, 118 N. Y. Supp. 315, affirmed 202 N. Y. 573, 96 N. E. 1112, in People ex rel. Moynehan v. Gaus, 134 App. Div. 80, 118 N. Y. Supp. 756, affirmed 198 N. Y. 501, 92 N. E. 1097, and in People ex rel. Lake Placid Co., v. Williams, 145 App. Div. 34, 129 N. Y. Supp. 767, dismissed 205 N. Y. 597, 98 N. E. 1112, the plaintiffs' testator was an actual occupant in possession of the land within the meaning of the Tax Law, and hence entitled to notice, and the deeds should not have been recorded until the expiration of the time mentioned in such notice. As was said in the Lake Placid Case, supra:

"Occupancy, of course, does not mean, according to any definition applied to these sales, that the owner or some of its representatives must build a house and reside upon the particular part of the land sold for taxes."

This is clearly implied from the provisions for service on the occupant if he does not reside in the tax district in which the real estate is situate.

"Land may be in the possession or occupancy of a person within the meaning of a statute, although he resides elsewhere." Jones v. Chamberlain, 109 N. Y. 100, 107, 16 N. E. 72, 73.

"A tract of land covered with the virgin forest cannot be cultivated. We would not expect the owner to erect upon it a commodious dwelling house, or to inclose it by a fence." Clark v. Kirkland, supra.

"Wherever there is a subjection of land to the will and control of another, with title in him, it is occupied by that other. It is in the actual legal possession of that other." United States v. Rogers (D. C.) 23 Fed. 658, 666.

"To constitute actual possession, it is not necessary that there should be any fence or inclosure of the land." Ellicott v. Pearl, 35 U. S. (10 Pet.) 442, 9 L. Ed. 475.

"Any person liable to be taxed for the real estate he occupies is, within the meaning of the act requiring notice, an occupant. It is not necessary that his possession should be of such a character as that after 20 years' continuance it should ripen into a title. The comptroller's deed is inoperative, even as to unoccupied and unimproved lands, if such lands constitute a portion of an entire lot conveyed by the comptroller, and other portions of the lot are actually possessed or occupied, and notice has not been given to the

person or persons in such actual possession or occupancy." Comstock v. Beardsley, 15 Wend. 348.

"The omission to give such notice to an actual occupant of part renders the deed inoperative as to the residue of the lands included in it, although such residue be wholly unimproved." Bush v. Davison, 16 Wend. 550; Lucas v. McEnerna, 19 Hun, 14; Leland v. Bennett, 5 Hill, 286.

"The tendency of the authorities is to construe statutes of this kind liberally in favor of the occupants or owners." Clark v. Kirkland, supra.

At the time of the assessment and the sale, it is not disputed but that plaintiffs' testator had the legal title to the property sold under the tax sale to the defendant. It is not claimed that any other person had the care, control, use, or occupation of that land. To be sure plaintiffs' testator was not actually living upon the part sold. He was using it, however, for all those purposes for which forest lands can ordinarily be used, and as a part of and in connection with the land on which he and his family lived several months of the year. Forest lands, to retain their condition as such, could not well have other uses than those to which the plaintiffs' testator was putting these lands in question. He was not required to fence the property, for a fence would be but a mere evidence of an assertion of ownership, and that evidence of ownership is shown by the other things which he did upon the property and in connection with it. The plaintiffs bring themselves well within the language of section 134 of the Tax Law. Their testator lawfully entered upon the land and was in the possession thereof to the exclusion of every other person at the time of making the assessment, the tax sale, and the giving of the deeds to the defendant, and he had during all of that time the actual, lawful, and exclusive use and possession of the lands, exercising control and dominion over them, and was entitled to the notice to redeem. The defendant purchaser made no proof that he had ever been in possession of the lands described in his deeds. He therefore acquired no title by the comptroller's deed. The records of the deeds in the absence of proof of service of the notice, was a nullity, and the deeds themselves should be declared null and void. Ostrander v. Reis, 206 N. Y. 448, 100 N. E. 37. The form of the action for the relief sought is authorized under section 132 of the Tax Law and Adirondack League Club v. Keyes, 122 App. Div. 178, 106 N. Y. Supp. 963.

A decision may be prepared in conformity with this memorandum.