THE PEOPLE ex rel. GEORGE BARNARD, Assignee, etc., Respondent, *v*. EDWARD WEMPLE, Comptroller, etc., Appellant.

Where lands owned by a non-resident of the county are occupied by a resident of the town, an assessment thereof to the owner in the part of the roll devoted to non-resident lands is illegal and invalid; the lands should be assessed to the resident occupant.

The act of 1878 (Chap. 152, Laws of 1878) amending the act of 1855 (Chap. 427, Laws of 1855) in reference to the collection of taxes on lands of non-residents, was designed to accomplish two things only; first, to make lands occupied by persons other than the owner assessable against such

owner if he resided in the county, although not in the town or ward; second, to provide for the care of occupied lands of a non-resident where the occupants were also non-residents; it did not authorize lands of a non-resident in the possession of a resident occupant to be assessed and returned as non-resident lands.

Where lands of a non-resident, occupied by residents of the town, were assessed to the non-resident owner and placed in the non-resident column, and the state comptroller, assuming to act under the statute of 1885 (§ 2, chap. 453, Laws of 1885), which authorizes him whenever "any unpaid tax levied upon an assessment of land * * * shall be ascertained * * * to be illegal or void," to re-levy the same, re-levied the tax against the occupants, *held,* that the original assessment was void and the tax could not be re-levied; that the action of the comptroller involved a new or original assessment by him; that this was not authorized by said act, as it related only to unoccupied lands of non-residents, or to occupied lands the owners and occupants of which are non-residents, where the re-levy could be made on the basis of the old assessment.

*It seems,* if it is necessary to construe said act, as authorizing the action of the comptroller, it is in that respect unconstitutional, as no provision is made therein for giving the occupants notice and the right to be heard; also, that the fact notice was given to the owner by letter from the comptroller would not validate such an assessment and levy.

(Argued October 10, 1889; decided October 22, 1889.)

Appeal from so much of the order of the General Term of the Supreme Court in the third judicial department, made July 6, 1886, as reversed and set aside the action and determination of Alfred C. Chapin, comptroller of the state of New York, in re-levying taxes upon certain lands, which determination was brought up for review by *certiorari.*

The facts are as follows: George Clark, a resident of the county of Otsego, was the owner of several parcels of land in the town and village of Catskill, Greene county. The taxes thereon for the years 1877 to 1882, inclusive, were not paid, and were returned to the comptroller for non-payment, and were by him admitted and entered upon his books. In December, 1885, all of said lots were sold by the comptroller at the state tax sale for all of the unpaid taxes, and were bought in by the state. George Clark having made a general assignment for the benefit of creditors to the relator, the latter applied to the

.comptroller to cancel said sale because of certain irregularities. The comptroller upon examination did cancel it in December, 1887, as to all the lots. Some of the taxes were considered by the comptroller to be valid and some invalid, but there was no lot as to which there was not at least one invalid tax, and, therefore, the comptroller set aside the entire sale in pursuance of section 83, chapter 427, Laws of 1855.

*First.* Certain of the lots were imperfectly described, and because of this error the comptroller charged back to the county of Greene the amount of the taxes upon them, in pursuance of section 84 of the chapter cited.

*Second.* Certain of the taxes upon some of the lots appeared to be regularly laid and valid, and the comptroller carried them forward in his books as valid taxes remaining unpaid.

*Third.* Certain other of the taxes were upon lots occupied by the tenants of George Clark. These lots were not assessed to the occupants, but were assessed as non-resident land, except that in some cases the name George Clark was placed at the head of the column in which the lots were described, and in other cases the name George Clark was placed in said column preceding the description of each lot.

*Fourth.* In some cases the assessment was valid except that the oath of the assessors was defective in some years, and was wholly omitted in the year 1880.

The comptroller, with respect to the taxes in classes 3 and 4, acting under the assumed authority of chapter 453, Laws of 1885, re-levied the same at the original amount and added thereto five per cent. To review his action in this respect this *certiorari* was issued.

The General Term affirmed the action as to class 4, but reversed it as to class 3.

*Z. S. Westbrook* for appellant. Chapter 453 of the Laws of 1885 is a curative and remedial act, and is constitutional. (Wade on Retroactive Laws, §§ 251, 252, 253, 254; Cooley's Const. Lim. 455–473; Cooley on Taxation, 297–312;

*Ensign* v. *Barse,* 107 N. Y. 329; *People* v. *Turner,* 49 Hun, 466; *In re Lamb,* 51 id. 634; *People ex rel.* v. *Suprs.,* 70 N. Y. 223, 224, 228; *In re Van Antwerp,* 56 id. 261; *People ex rel.* v. *Bd. of Assessors,* 92 id. 430; *People ex rel.* v. *McDonald,* 69 id. 367.) The legislature may cure any defects by statute in taxes, except such as are jurisdictional; and the legislature may take away one remedy and provide another. The legislature could authorize the comptroller to assess instead of the assessors, and to levy instead of the supervisors. (*Ensign* v. *Barse,* 107 N. Y. 329.) The lands were returned under the name of George Clark, with a proper description, in the proper place in the roll, with non-resident lands as non-resident lands, though they were actually occupied lands. They were properly described as non-resident lands. They were properly and legally returned as non-resident assessments. The addition of Clark's name in the description of lands as the owner thereof did not change the assessments to resident or personal assessments. The name of Clark was a mere matter of designation and description, and did not vitiate the assessment. (*Alvord* v. *Collins,* 20 Pick. 418; *Miller* v. *Hale,* 26 Penn. St. 432; *People* v. *Equitable Trust Co.,* 96 N. Y. 387; *In re McPherson,* 104 id. 306; *People* v. *Suprs.,* 36 Hun, 491.) The relator cannot allege that the act in question attempts to deprive him of property without due process of law. (Cooley on Taxation, 47–50; *Kelly* v. *Pittsburg,* 104 U. S. 78; *In re McMahon* v. *Palmer,* 102 N. Y. 189; *People ex rel.* v. *Bd. of Assessors,* 92 N. Y. 430; *In re Lamb,* 51 Hun, 634.) The provisions of the statute authorizing lands of a non-resident to be assessed to occupants is made for the benefit of the People, not for the owner, and the legislature could require the land, though occupied, to be assessed to the occupant, or as non-resident. (Laws of 1878, chap. 152, § 1; *Stewart* v. *Fonda,* 19 Hun, 196.) The land in question upon which the unpaid taxes were re-levied could be, as it was, assessed as non-resident lands. (*Stewart* v. *Crysler,* 100 N. Y. 378; *Hilton* v. *Fonda,* 86 id. 339.)

The only fact necessary to give assessors jurisdiction as to real estate is that it be situated in their town or ward. (*Van Rensselaer* v. *Cottrell,* 7 Barb, 127.)· Analogous statutes for levying taxes have been held constitutional and valid. (*People ex rel.* v. *Bd. of Assessors,* 92 N. Y. 430 ; *People ex rel.* v. *Goff,* 52 id. 434; *In re Van Antwerp,* 56 id. 261; *In re Trustees, etc.,* 31 id. 574; *In re E. C. Bk.,* 18 id. 199, 215 ; *Happy* v. *Mosher,* 48 id. 313; *Campbell* v. *Evans,* 45 id. 356 ; Cooley on Const. Lim. 452.) The statute is retroactive so far as to authorize a re-levy of taxes returned to the comptroller prior to its enactment. (*People ex rel.* v. *Suprs.,* 70 N. Y. 228, 236, 237; *People ex rel.* v. *Suprs.,* 65 id. 300 ; *People ex rel.* v. *Spicer,* 99 id. 225, 233, 234; *Henry* v. *B. B. Soc.,* 33 Barb. 360.) The writ of *certiorari* was not granted and served in time. (Code Civ. Pro. § 2125.)

*James B. Olney* for respondent. The defects, omissions and irregularities are, many of them, jurisdictional. They permeated and tainted the whole assessment. (*People* v. *Hagadorn,* 104 N. Y. 516 ; *Ensign* v. *Barse,* 107 id. 331.) The act of 1885 is not, and never was intended as, a retrospective statute. (*People ex rel.* v. *Chapin,* 104 N. Y. 375 ; *Ensign* v. *Barse,* 107 id. 320.) Retroactive laws cannot validate or legalize an assessment which is so fatally defective as to be entirely void, whether for want of jurisdiction or want of authority to make it. (Black on Tax Tit. § 275 and note ; *Dingley* v. *Hope,* 1 N. Y. 79 ; *In re Hearn,* 96 id., 379 ; Cooley on Const. Lim. 382; Cooley on Tax. 227.) The comptroller had no more right to "relevy" a tax against the water lots than he had against those that were occupied. (H. & D. 143 ; *Ritter* v. *Worth,* 55 N. Y. 628 ; *Stewart* v. *Fonda,* 19 Hun, 191 ; *Hilton* v. *Fonda,* 86 N. Y. 340–346 ; *R. R. Co.* v. *Lyon,* 16 Barb. 651.) Before the tax-roll is signed the board of supervisors is required to make the non-resident taxes conform to law, and to expunge the descriptions and the assessments from the roll. (1 R. S. [6th ed.] 942.) These elements are jurisdictional, and their

omission cannot be remedied. (*Bellinger* v. *Gray*, 51 N. Y. 621.) If the error for which cancellation of a tax is made be that of town or county officers, the board of supervisors must levy the sum named upon the taxable property of the county as a county charge. (Section 83.) (*People ex rel.* v. *Chapin*, 104 N. Y. 375.) Under the eighty-second and eighty-third sections of the act of 1855 the comptroller is to cancel when he "discovers" that the proceedings will not give title to the purchaser. It is the "failure of title" that is the essential element. (*People ex rel.* v. *Chapin*, 105 N. Y. 309.) The court, so far as the validity of these taxes are concerned, will take judicial notice that the assessments made and the taxes levied are identical in form and substance; and upon the same lands as those in the noted case of *Clark* v. *Davenport* (95 N. Y. 477; 30 Hun, 161).

FINCH, J. The comptroller appeals from so much of the order of the General Term as annuls his action in re-levying taxes upon the occupied lots. He acted and justifies his action under chapter 453 of the Laws of 1885. That act provides that "whenever any unpaid tax levied upon an assessment of land by a town or ward having a legal right to assess the same which may have been returned to and admitted by the comptroller shall be ascertained either before or after sale thereof to be illegal or void by reason of any irregularity or defect in or omission of statutory requirements for creating or collecting such tax the comptroller is hereby directed and empowered, whenever deemed practicable by him, to re-levy the correct amount of such tax and add thereto the five per cent allowed by law to be added by the collector, which aggregate amount of tax and charge, with interest thereon at ten per cent per annum from the first day of August following the admission of such illegal or void tax, shall thereupon be due and payable, and shall be subject to existing provisions of law governing the collection of and sale for unpaid taxes by the comptroller." This act is undoubtedly a convenience to the state, and furnishes a summary remedy for illegal

taxes sought to be enforced against non-resident lands. When discovered to be illegal they are to be re-levied by the comptroller and then collected. Within certain limits the act works no injustice, but when enforced to its full extent the right of the taxpayer to notice of his assessment seems to disappear at the door of the state house.

This case furnishes an illustration in its facts, which are these: The lands in question were in the county of Greene and owned by one George Clark. He was a non-resident of the county, but the lots assessed were all of them occupied by his tenants, residents of the town. The lands should have been assessed to the resident occupants. They were assessed to the non-resident owner, and in the part of the roll devoted to non-resident lands. The assessment was, therefore, invalid and illegal, and the lots were not effectually assessed at all. The learned counsel for the comptroller declares in his brief that "the law does not read that way, and it is difficult to see how such a construction can be fairly put upon the statute." We have offended against that criticism in, at least, three cases. (*Buffalo & S. L. R. R. Co.* v. *Suprs. of Erie,* 48 N. Y. 101; *Hilton* v. *Fonda,* 86 id. 339; *Stewart* v. *Crysler,* 100 id. 178.) The first of these cases was decided before the amendment of 1878, but the others after it went into effect. That amendment was designed to accomplish two things only, and those were to make lands occupied by persons other than the owners assessable against such owner if he resided in the county, although not in the town or ward; and to provide for the omitted case of occupied lands of a non-resident owner where the occupants themselves were also non-residents. In that case the lands would be as much non-resident lands as if wholly unoccupied. The claim that the phrase "be assessed to the occupant as lands of non-residents" gives to the assessors an arbitrary choice, independent of the facts, is not to be encouraged. It is contrary to the whole scheme of the statute to permit land of a non-resident owner which is in the possession of resident occupants who can themselves be assessed and compelled to pay as if they were in truth owners to be treated

and returned as non-resident land.   There is neither necessity nor justice in that, and full force is given to the expression as relating to a case where both owner and occupants are non-residents.   That is the construction we have adopted and with which we remain satisfied.

Now the occupied lands in the present case were not assessed to the resident occupants, nor even as non-resident land, but were assessed to the non-resident owner.   While it is true that they were placed in the non-resident column, yet the name of the owner was appended, and so a personal liability on the face of the roll was initiated against him.   As a consequence the lands were not assessed at all.   There was not even the form or appearance of an assessment against the occupants, and that against the owner was illegal and invalid. Under such circumstances a re-levy of the tax by the comptroller necessarily involved a new assessment by him, and against the occupants who as yet had never been assessed at all.   If he could make such assessment, which would necessarily be the first or original one against them, he certainly must act under some law which gives them notice and a right to be heard.   The notice of the assessors was not such, for the occupants were not then assessed, and it did not concern them in the least.   If they appeared on the review day they only ascertained that there was no assessment against them and so no right of theirs in any manner threatened   If the owner appeared he found an invalid assessment of which he need not complain, since it could not be enforced.   The comptroller, therefore, under the law, could only re-levy the tax against the occupants, and to do that he must first assess the occupants who had not been assessed before.   If the law could make him an assessor for Greene county and then its collector, it could not do so as against the occupants without some provision for notice and some chance of a hearing.   (*Stuart* v. *Palmer*, 74 N. Y. 183.)   It is said that notice was given to the owner by letter from the comptroller's office.   That was a very proper thing to do but did not affect the occupants or help the case; for the question always is, not what was done,

but what might be done under the law. If, therefore, we construe this act to admit of an assessment where none had been made by the local officers, or one which was absolutely void and a complete nullity, we necessarily interpret it to authorize a new and original assessment against individuals not assessed before and without any provision for notice.

The act, therefore, should be limited as, indeed, its own terms indicate. It can relate only to unoccupied lands of non-residents, or where the occupants are themselves non-residents, which alone can be assessed as non-resident lands and returned as such to the comptroller, and permits him to re-levy on the basis of the old assessment where the same is irregular or void, but not in any respect which violates the constitutional rights of the owner.

We are assured that the act is a curative statute. That may well be said of it as we have construed it, but it is impossible to cure what never had life enough to be sick. There never was any assessment against the occupants, and nothing to be cured. As to them it was simply an omitted tax, and the cases of *People ex rel.* v. *Board of Assessors of Brooklyn* (92 N. Y. 430) and *People ex rel.* v. *Goff* (52 id. 434), cited by the appellant, show what the remedy in such a case is.

We agree, therefore, with the General Term in their conclusion that the taxes in question could not be re-levied.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.