THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* WALTER C. WITHERBEE and Others, Respondents.

Third Department, December 28, 1921.

Taxation — action to determine title to land claimed by State under tax sale — notice to redeem not served on occupant pursuant to Laws of 1855, chap. 427, § 68 — what constitutes occupancy requiring service of notice to redeem — deed to State void for failure to serve notice and record evidence thereof — Tax Law, §§ 132 and 133, not applicable — occupant had right to rely on notice to redeem.

In an action to determine the title to a lot of land in Essex county, it appeared that in 1861 one-half interest in the lot was conveyed by the People to the defendant's predecessor in title; that in 1877, following a tax sale, the Comptroller executed a deed to the State of that one-half interest; that a notice to redeem, as required by section 68 of chapter 427 of the Laws of 1855, was not served on the occupant of said lot within two years from the expiration of the period of redemption; that no evidence

of the service of such notice was recorded with the conveyance to the State, as required by the act; that during the years after 1867 and until this action was begun, two clearings of the lot were used for pasturing, for cutting hay and for raising crops, and the forest lands for ·cutting wood and lumber and making shingles for market, and this occupancy was continuous by those who were living thereon, and that entry was made under the owner of the other undivided one-half interest.

*Held*, that there was an open use of the property, according to the usual course and custom of the adjoining country, by persons claiming the right to use, and that the persons in possession were occupants on whom notice of redemption should have been served.

As no notice to redeem was served on the occupant after two years from the expiration of the period of redemption under the tax sale of 1877, and no evidence of service of such notice was recorded with the conveyance, the deed to the State following the 1877 tax sale is void.

Sections 132 and 133 of the Tax Law are not applicable, since the lands in question were not vacant lands when the Comptroller's notice was published in 1894, pursuant to section 13 of chapter 711 of the Laws of 1893, now section 133 of the Tax Law, and· also because the State did not then have title to the lot " from a tax sale or otherwise," as the deed to the State was void.

As section 132 of the Tax Law provides that the deed shall be conclusive evidence that the sale and all proceedings prior thereto were regular and that all notices required by law to be given previous to the expiration of the redemption period were given, the conveyance to the State was not made evidence thereby of the giving of the redemption notice which was required to be given two years after the expiration of the redemption period.

The record of the deed, no evidence of the service of the notice of redemption having been recorded with it, is absolutely void, and the deed must be regarded as if never placed on record.

The occupant of the land could rely on the provisions of the statute requiring this notice to him and was not in jeopardy of losing his title under a tax sale, when the required notice had not been served upon him.

APPEAL by the plaintiff, The People of the State of New York, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Essex on the 9th day of March, 1921, upon the decision of the court rendered after a trial at the Essex Trial Term without a jury.

*Charles D. Newton, Attorney-General* [*William T. Moore, Deputy Attorney-General*, of counsel], for the appellant.

*Patrick J. Tierney* and *George N. Ostrander*, for the respondents.

Judgment unanimously affirmed, with costs, on the opinion of Mr. Justice VAN KIRK at Trial Term; VAN KIRK, J., not sitting.

The following is the opinion delivered at Trial Term:

VAN KIRK, J.:

George A. Stevens died after this case was submitted and the Stevens Hotel Company has been substituted as a defendant in his place.

The action was brought October 7, 1904, to determine the title to lot 5 of Whiteface Mountain tract, containing 1,530 acres, more or less, in the town of North Elba, Essex county, N. Y. A judgment, entered upon stipulation of the parties, the Forest, Fish and Game Commission representing the plaintiff, has been vacated and the action is here for trial.

In December, 1861, a one-half interest of lots 1 and 5 in said tract was conveyed to Eliza Comstock. This half interest has by mesne conveyances gone to the plaintiff. Also in December, 1861, the other one-half interest was conveyed by the People to Joshua Brush, who, in 1868, conveyed the same to DeWitt Clinton Morris. In December, 1903, DeWitt Clinton Morris and wife conveyed a one-half interest in said lot No. 5 to Walter C. Witherbee. The defendants claim title to this half by mesne conveyances from Brush.

Lots 1 and 5 were sold by the Comptroller, for unpaid taxes, in October, 1877. The one-half belonging to Eliza Comstock had been at that time conveyed to Eliza Carter, who redeemed the same. The Comptroller executed a deed to the State of the other (Brush) half. The State claims its title to this half under said tax sale and deed. There were two other tax sales, one in 1881 and one in 1885, but at these sales the lands were withdrawn from sale by the State and no title passed by the deeds following those sales. (*People* v. *Inman,* 197 N. Y. 200, 205; *Saranac L. & T. Co.* v. *Roberts,* 195 id. 303, 312.) The attempted agreement of partition in 1899 was not participated in by those owning the Brush half of lots 1 and 5, and is not binding upon them, unless the State's title to that half under the 1877 tax sale was valid. This partition agreement, therefore, cannot affect the result of this action.

The sale took place while the Tax Law of 1855, chapter 427,

was in effect. No notice to redeem, as required by section 68 of this chapter,* was served upon an occupant of these lands. This statute requires that such notice be served within two years from the expiration of the period of redemption if the lands were occupied at the expiration of the period of redemption. No evidence of the service of such notice was recorded with the conveyance, as required by the act. The period of redemption expired in October, 1879. Lots 1 and 5 were sold together, the sale of the two lots was one transaction, and, when considering the question of occupancy, the lots should be treated as one piece of land. The plaintiff offered no evidence as to occupancy, but claims that the defendants' proof thereon is insufficient.

The evidence as to occupancy in October, 1879, shows the following facts: The north line of lot 1 and the south line of lot 5 are identical for some distance. There is a highway running through these two lots, where the lines join. As far back as 1867, or 1868, there was a log house on lot 1, a few rods south of lot 5. In 1867, or 1868, this log house was occupied and a few years later another house was constructed on the opposite side of the road; also a small house was constructed a short distance south of the log house on lot 1. There were two clearings on lot 5, one near the boundary line between 1 and 5, and one further north, near Owen pond brook. The watershed there is to the north and the word " down" means north.

Sirenus Watson worked for Allen Comstock, the son of Peter Comstock, from time to time, from 1867 until about 1884, on these lots. At this time Peter Comstock, the husband of Eliza Comstock, had a power of attorney to manage and control her real estate and sell the same. During part of this time, Sirenus Watson's brother, David Watson, lived in the house on lot 1. During these years the occupants of these houses cut hay upon, and raised crops upon, the two said clearings, made shingles, and cut lumber upon lot 5. George Watson, the son of David, says his father moved upon the premises when he was four or five years old. He was fifty years of age in November, 1919, which would fix the date of going upon the premises

---

* See Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), § 134.— [REP.

in 1873 or 1874. Leonie Warren, seventy years of age, knew David Watson since boyhood; the first time he saw him there was about forty-three years ago, and he fixes the time by the age of his first child. David Watson continued to live on lot 5 until 1908. There were other witnesses as to occupancy. No permanent residences were upon lot 5, but George Watson lived on the lot about two years after he married in 1893, and there were two camps where people lived while cutting shingles and lumber on the lot.

The evidence justifies this conclusion: During all of the years after 1867 and 1868, till this action was begun, the two clearings were used for pasturing, for cutting hay and for raising crops, and the forest lands for cutting wood and lumber and making shingles for market, and this occupancy was continuous by those who were living in the aforesaid houses, and entry was made under Eliza Carter, the owner of an undivided one-half interest. This was an open use of the property, according to the usual course and custom of the adjoining country, by persons claiming the right to so use — such a use as an owner would exercise under the circumstances and the conditions existing in that locality (See Code Civ. Proc. §§ 369, 370); and such a use as exposed the occupant to an action in ejectment by any other person who might claim the lands.

This seems an occupancy within the definition in Laws of 1893, chapter 711, section 14.* (Though this act is of later date than the beginning of the occupancy, it is considered declaratory of the meaning of the words " occupant " and " occupancy " in the earlier statutes. See Stockdale v. Insurance Cos., 20 Wall. 323, 331.) The entry was made under an owner of a one-half interest in lots 1 and 5, and the possession lawful and actual. It follows that, because no notice to redeem was served on the occupant and no evidence of service of such notice was recorded with the conveyance, the deed following the 1877 tax sale is void. (People v. Ladew, 189 N. Y. 355, 360; on reargument, 190 id. 543; Ostrander v. Reis, 206 id. 448.)

The State must succeed, if at all, upon its own title. It cannot succeed upon the record in this case, unless the statute

*See Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62), § 134. — [Rep.

invoked (Tax Law, §§ 132, 133) protects its void title against attack.   Section 132 reads as follows:

"Effect of former deeds.— Every such conveyance heretofore executed by the Comptroller, county treasurer or county judge and all conveyances of the same lands by his grantee or grantees therein named, which have for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the Comptroller, that shall have remained in force for two years after the last day allowed by law for redemption from such sale, shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the Comptroller, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from June fifteenth, eighteen hundred and ninety-six; and in the case of the sale of eighteen hundred and ninety-five and of all sales hereafter held, that such application shall be made, or such action brought, within five years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be cancelled."

Provisions similar to section 132 have been in our statutes for many years and have been frequently under consideration of our courts.   It has been held that the provisions may have effect as curative acts and as limitation statutes.   As curative acts they avoid irregularities only.   As a limitation they cannot be effective, except when the claimant has had an opportunity

to assert his claim in court. It has not yet been held that one who is in actual possession as owner, and is enjoying all the property rights he could enjoy, if his lawful ownership had been adjudged in court, need bring an action or his right would be forfeited by statute. (*Joslyn* v. *Rockwell,* 128 N. Y. 334.)

The lands affected by section 133 (providing for publication of Comptroller's notice of possession) are " wild, vacant and forest lands " only. Lands occupied in good faith by one claiming to own them (not those occupied at the time by a squatter) are not within the statute; and wild, vacant and forest lands are within the statute only when the State holds title to them from a tax sale or otherwise. These lands in question were not vacant lands when the Comptroller's notice was published in 1894. They for many years had been openly occupied, used and cultivated. The State did not have title to them " from a tax sale or otherwise."* Also section 132 of the Tax Law provides that the deed shall be conclusive evidence that the sale and all proceedings prior thereto were regular and that all notices required by law to be given previous to the expiration of the redemption period were given. It covers no notice required to be given later. The notice to the occupant is to be given within two years after the expiration of the redemption period. The conveyance then is not made evidence of the giving of this notice. The record of the deed, no evidence of the service of the notice having been recorded with it, is absolutely void, and the deed must be regarded as if never placed on record. (*People* v. *Ladew, supra; Ostrander* v. *Reis, supra.*) The occupant of the land could rely on the provisions of the statute requiring this notice to him and was not in jeopardy of losing his title under a tax sale, when the required notice had not been served upon him, and because he had not read carefully the publication of the Comptroller's notice and discovered this land, on which he had been living, was claimed by the State. No other or later statute has validated this void deed, or taken from the occupant claiming the land the right to this notice, or the protection it afforded him. (*Ostrander* v. *Reis, supra,* 454.)

The defendants are, therefore, entitled to judgment dismissing the complaint, with costs.

A decision may be prepared accordingly.

---

* See, also, Laws of 1893, chap. 711, § 13.— [REP.