THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CYRUS
DUREY, Defendant.

Supreme Court, Fulton County, February, 1926.

Taxation — action by State to recover lands in Fulton county — lands
within tax district having resident owner or manager are resident lands
and assessment thereof as non-resident lands is jurisdictional defect —
assessment of said lands as non-resident in 1886 erroneous and void —
error not mere irregularity — sale for non-payment of taxes void —
evidence shows said lands were occupied on expiration date of right to
redeem within meaning of Tax Law, § 134 — failure of State to serve
notice to redeem on occupant vitiates its claim to title — fact that
service of notice was not recorded with conveyance to State rendered
deed void — defendant claiming lands by virtue of mesne conveyances
extending to original patentees, has title in lands — defendant's title
not defective by virtue of Tax Law, § 132 — fact that deed to State was
recorded does not bar defendant's claim to title in absence of proof of
service of notice on occupant of said lands — lands occupied in good
faith by one claiming to own them are not wild, vacant and forest lands
within meaning of Tax Law, § 133 — tax deed canceled of record and
complaint dismissed.

Lands within a tax district, having a resident owner or resident agent, are resident
lands, and where they are assessed as non-resident lands the defect is jurisdic-
tional and cannot be cured by subsequent legislation.

Accordingly, the non-resident assessment of a 100-acre tract of land in Fulton
county, embracing subdivision 4 of Great Lot 61 of the Glen, Bleecker and Lansing
patent for the year 1866, was accidental, a palpable error and void in its incep-
tion and the deed to the State by reason of a sale by the State Comptroller for
the non-payment of taxes is void, where it appears that one Wheeler, against
whom said assessment was made, was either the sole owner or the owner of an
undivided half interest with one Claflin, who was a resident and a voter of the
town of Caroga, Fulton county, having come into said town in 1865 and remained
a resident thereof until 1873; and that the same lands in connection with
thousands of acres in the same tract were assessed against Wheeler & Claflin
as resident owners in 1865 and that from 1867 to 1883 the same premises were
assessed as resident lands either in the name of Wheeler or Wheeler & Claflin
or Claflin, or the resident owner or resident agent and the taxes actually paid
thereon.

Moreover, the contention of the State, in an action in ejectment to recover said
lands, that the error in assessment is a mere irregularity, is untenable, partic-
ularly where its assertion of title to the lands is predicated on said error, which
set in motion a chain of events resulting in the sale for taxes and the delivery of
the tax deed to the State.

The said lands on October 18, 1879, the expiration date of the right to redemption,
were occupied within the meaning of section 134 of the Tax Law, and the failure
of the State to serve upon the occupant of the lands a notice of redemption and
the absence of evidence showing that the service of said notice pursuant to
statute was recorded with the conveyance to the State, renders void the deed
given by the Comptroller to the State in 1880 predicated on the tax sale of 1877.

Consequently, the defendant claiming title by mesne conveyances extending to the original patentees of the tract has title to the lands in question, and plaintiff's complaint should be dismissed on the merits and the tax deed canceled of record.

The defendant's claim of title is not barred by the Statute of Limitations under section 132 of the Tax Law making a conveyance executed by the Comptroller which for two years has been recorded in the office of the clerk of the county in which the lands conveyed thereby are located, conclusive evidence that the sale and proceedings prior thereto were regular and proper, since the statute only attempts to cure defects up to the point of sale and does not alter the effect of the failure to give a notice to redeem to the occupant, which arises subsequent to the sale.

The recording of the tax deed does not bar defendant's claim of title, since recording the tax deed without proof of service of the notice on the occupant, expressly required by statute to be recorded with the conveyance, is the same as though it never had been placed on the record book.

Nor did the publication of notice by the Comptroller during the month of December, 1894, pursuant to section 133 of the Tax Law, to the effect that he was in possession of lands as " wild, vacant and forest lands   *   *   * to which the State holds title " confer right of title in the State, since lands occupied in good faith by one claiming to own them are not within the statute; the lands herein were neither wild nor vacant.

ACTION in ejectment to recover lands located in the town of Caroga, Fulton county, N. Y., and affects what is known as sub-division 4 of Great Lot 61 of the Glen, Bleecker & Lansing Patent, comprising about 100 acres.

*Albert Ottinger, Attorney-General [Eric J. Lake of counsel], for the plaintiff.*

*Alfred D. Dennison, for the defendant.*

HEFFERNAN, J.  On the 10th day of November, 1794, letters patent were issued in the name of the People of the State of New York to Cornelius Glen, Barent Bleecker and Abram Lansing, embracing a tract of 89,297 acres of land in the county of Montgomery.  The lands in question are a part of that grant.  At that time Montgomery county embraced the territory now included in the county of Fulton.  By chapter 332 of the Laws of 1838 Fulton county was erected and the lands which are the subject of controversy here are located within the bounds of that county.

The patentees subdivided the tract of land allotted to them into great lots, each great lot consisting of 1,000 acres.  In turn, the great lots were again subdivided into 100-acre tracts.  The defendant claims title to the lands in question by mesne conveyances extending to the original patentees.

On September 17, 1864, Jonathan W. Wheeler acquired title to subdivision 4 of Great Lot 61.  By a deed acknowledged on September 17, 1866, and recorded in the Fulton county clerk's office on

February 6, 1867, Wheeler conveyed to William Claflin an undivided one-half interest in this lot, together with other lands. Thereafter and by an instrument acknowledged on July 23, 1869, and recorded in said clerk's office on October 19, 1869, Wheeler and wife conveyed to Claflin all their interest in said lot, together with other lands. Apparently Wheeler and Claflin were copartners, and by what is known as a dissolution deed, dated June 18, 1872, and recorded in said clerk's office on July 10, 1872, Wheeler and wife conveyed to Claflin all their interest in the real and personal property belonging to the partnership including the land in the town of Caroga in Fulton county. From 1865 to and including the year 1883 the assessment books of the town of Caroga showed that assessments were made either against Wheeler & Claflin, Claflin & Company, William Claflin, or their agents, on immense tracts of land located in the town which said lands were all portions of the patent in question. These assessment books disclose that for the year 1865 the assessment was made against Wheeler & Claflin on the resident list for 7,109 acres in various items by lot and division numbers including subdivision 4 of Great Lot 61, the plot in question. For the year 1866 Wheeler & Claflin were assessed on the resident list for 9,224 acres comprising various items by lot and division numbers excluding, however, the land in question. For that year the lands embraced in subdivision 4 of Great Lot 61 were assessed as non-resident. From 1867 to 1883, inclusive, assessments were made against either Wheeler & Claflin, Claflin & Company, Claflin, individually, or their agents for the identical lands in subdivision 4 of Great Lot 61 on the resident list. For all these years the taxes were paid. The lands described in subdivision 4 of Great Lot 61 were a contiguous and homogeneous part of one great tract of land in the patent to which reference has been made. It is quite significant that all taxes assessed against Wheeler & Claflin on the resident list for 1866 were paid. The assessment for 1866 against the premises in question was based on non-residence, amounted to twenty-four dollars and sixty-five cents and was unpaid. Because of the failure to pay this tax these premises were advertised by the Comptroller of the State to be sold for arrears of tax at the Capitol in the city of Albany, N. Y., commencing on October 9, 1877. The premises were actually sold on October 12, 1877, more than eleven years after the accrual of the tax, and the State became the purchaser. On April 5, 1880, the Comptroller made a tax deed of the premises to the People of the State. That conveyance, however, was not recorded in the Fulton county clerk's office until June 7, 1882. By virtue of that deed the State claims title to the premises in this litigation. Commencing on the 11th day of December, 1894, and

ending on December twenty-fourth of the same year, the Comptroller caused to be published in two newspapers in the county of Fulton a notice to the effect that from and after three weeks from December 11, 1894, possession of the premises in question should be deemed to be in the Comptroller of the State pursuant to the provisions of section 13 of chapter 711 of the Laws of 1893.

It is the contention of the defendant that the tax sale and the deed based thereon were void on jurisdictional grounds because the lands sold were assessed as non-resident when in fact they were resident lands, and further because at the expiration of the equity of redemption the lands were actually occupied and no notice was given to the occupant, and that proof of service of such notice was not recorded with the deed.

The answer of the State is that by reason of the operation of the Statute of Limitations set forth in section 132 of chapter 908 of the Laws of 1896, all defects, if any, in connection with the assessment and sale are now unavailing to the defendant and that there was no occupancy of the premises in question at the time of the expiration of the equity of redemption within the meaning of the provisions of the Tax Law.

At the time of the sale the statute (Laws of 1855, chap. 427, as amd. by Laws of 1860, chap. 209) provided (§ 68) that upon a sale of land for taxes and a conveyance thereof by the Comptroller, if in the actual occupancy of any person at the expiration of the two years given for redemption, " the grantee to whom he same shall have been conveyed, or the person claiming under him, shall serve a written notice on the person occupying such land, within two years from the expiration of said time to redeem; stating in substance, the sale and conveyance, the person to whom made, and the amount of the consideration money mentioned in the conveyance, with the addition of thirty-seven and one-half per cent on such amount, and further addition of the sum paid for the deed; and stating, also, that unless such * * * shall be paid into the treasury for the benefit of such grantee, within six months after the time of filing in the comptroller's office of the evidence of the service of the said notice, that the said conveyance will become absolute, and the occupant * * * barred from all right or title thereto. Any [and] no conveyance made in pursuance of this section shall be recorded, until the expiration of such notice, and the evidence of the service of such notice shall be recorded with such conveyance."

Sections 72 and 73 of the same chapter are as follows:

" § 72. In every case of actual occupancy, the grantee, or the person claiming under him, in order to complete his title to the land con-

veyed, shall within one month after the service of such notice, file with the comptroller a copy of the notice served, together with the affidavit of some person who shall be certified as credible, by the officer before whom such affidavit shall be taken, that such notice as is above required, was duly served, specifying the mode of service.

" § 73. If the comptroller shall be satisfied by such copy and affidavit that the proper notice has been duly served, and if the moneys required to be paid for the redemption of such lands shall not have been paid, as hereinbefore provided, he shall, under his hand and seal, certify such facts, and the conveyance before made shall thereupon become absolute; and the occupant, and all others interested in said lands shall be forever barred of all right and title thereto."

There was no material change in the Tax Law up to the time in question. Section 65 of chapter 427 of the Laws of 1855, as amended, refers to a conveyance which is directed to be executed by section 63 of the same act. Section 83 of the original Revised Statutes of 1828 (1 R. S. 412) required that a notice should be served upon the occupant if the premises were occupied at the time of the execution of the tax deed. Section 1 of chapter 108 of the Laws of 1830 provided that if lands were occupied at the end of the two-year redemption period, the purchaser at the sale must serve upon the occupant the notice required by section 83 above referred to. Section 86 of chapter 298 of the Laws of 1850 provided for a notice to occupants at the end of the redemption period of two years and in its last section expressly repeals chapter 108 of the Laws of 1830 except as to taxes assessed prior to 1849. The necessity, therefore, for service of the notice upon the occupant at the time of the conveyance has not existed since 1850.

The first curative statute is found in section 65 of chapter 427 of the Laws of 1855. That act contained no Statute of Limitations.

Chapter 448 of the Laws of 1885 amended section 65 of chapter 427 of the Laws of 1855 (as amd. by Laws of 1860, chap. 209) and contains provisions for making conveyances conclusive and also has a Statute of Limitations.

Chapter 711 of the Laws of 1893 repeals section 65, as amended, but re-enacted the same, with few changes, as two sections numbered 11 and 12.

Chapter 908 of the Laws of 1896 re-enacted, with few changes, sections 11 and 12 and renumbered them sections 131 and 132 and as such they are contained in the present Tax Law.

For all purposes necessary to be considered here, the present Tax Law (§§ 132–134) are the same as they were in the act of 1896.

Section 132 of the Tax Law provides that every such conveyance,

meaning a tax deed, made by the Comptroller, which has for two years been recorded in the office of the clerk of the county in which the lands are located, etc., " shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions. of all laws directing and requiring the same or in any manner relating thereto,  *  *  *." It further provides that such conveyances and the taxes and sales on which they are based shall be subject to cancellation for three reasons:

1. By reason of the payment of the taxes;

2. By reason of the levying of the taxes by a town or ward having no legal right to assess the land, and

3. By reason of any defect " in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the comptroller, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from June fifteen, eighteen hundred and ninety-six:  *  *  * "

Section 133 of the present Tax Law, which is exactly identical with section 13 of chapter 711 of the Laws of 1893, reads as follows:

" The comptroller may advertise once a week, for at least three weeks successively, a list of the wild, vacant and forest lands to which the state holds title, from a tax sale or otherwise, in one or more newspapers to be selected by him, published in the county in which the lands are situated, and from and after the expiration of such time, all such wild, vacant and forest lands are hereby declared to be and shall be deemed to be in the actual possession of the comptroller, and such possession shall be deemed to continue until he has been dispossessed by the judgment of a court of competent jurisdiction."

Presumably the notice published by the Comptroller commencing on December 11, 1894, and ending on December twenty-fourth of the same year, relating to these lands, was in compliance with that section. This act was intended to furnish a remedy to the landowner against the State. It was a consent by the State that it might be sued. (*Saranac Land & Timber Company* v. *Roberts*, 195 N. Y. 303; *People* v. *Ladew*, 237 id. 413.)

Section 134 of the present Tax Law provides, in substance, that if the lands or any part of them at the time of the expiration of one year given for the redemption be in the actual occupancy of any person, the grantee to whom the same shall have been

conveyed or the person claiming under him, shall within such period of a year from the expiration of the time to redeem, serve a written notice on the person occupying the land, stating the sale and conveyance, the person to whom made, the amount of the consideration, and that unless the consideration money shall be paid into the State treasury for the benefit of the grantee within six months after the time of filing in the Comptroller's office evidence of the service of such notice, the conveyance shall become absolute, and the occupant and all others interested in the land be forever barred from all right of title thereto. This provision is substantially similar to section 68 of chapter 427 of the Laws of 1855 which was in effect at the time of the sale here, except that the present law provides that it shall be within one year from the expiration of the time to redeem and the law then in effect made the time two years.

According to the provisions of the Tax Law land must be assessed to the resident and the tax levied creates a personal liability against him. If the land is owned by one not a resident of the tax district or if it is unoccupied, or if the occupant does not reside in the tax district, it must be assessed as non-resident land, in which event there is no personal liability for the payment of the tax imposed, but the lien is upon the land.

The evidence convinces me that in the year 1866 when the premises in question were assessed as non-resident lands Jonathan W. Wheeler, who was then either the sole owner or the owner of an undivided half interest with Claflin, was a resident and a voter of the town of Caroga. It is not disputed that he came there in 1865 and was a resident of the town as late as 1873. The assessors of the town of Caroga assessed this identical land against Wheeler & Claflin as resident owners in connection with thousands of other acres in the same tract for the year 1865. From 1867 to 1883 the same premises were assessed as resident lands either in the name of Wheeler, or Wheeler & Claflin, or Claflin, or the resident owner or the resident agent as the case might be. Not only were such assessments made throughout all these years but the taxes were actually paid. Unquestionably the assessors recognized the fact that all of the Wheeler & Claflin lands were resident lands for the purpose of assessment. They evidently intended to assess them as such. When the assessment was made against the premises embraced within subdivision 4 of Great Lot 61 as non-resident lands in 1866, the assessors apparently were under the impression that they were not assessing the Wheeler & Claflin tract. The action of the assessors in assessing these identical premises against Wheeler & Claflin as resident owners for all other years from 1865 to 1883

is evidence of the most cogent force to establish the resident character of the land. The conclusion is irresistible that the non-resident assessment of the 100-acre tract embraced in subdivision 4 of Great Lot 61 for the year 1866 was accidental and a palpable error on the part of the assessors. This error set in motion a chain of events resulting in the tax sale in 1877 and the delivery of the tax deed in April, 1880. It is due solely to this error that the State is now in a position to assert title to the premises in question. It is now claimed that this error is a mere irregularity cured by subsequent legislation, and that the defendant is in no position to attack the State's title founded on such proceedings. This contention is neither just nor tenable. Lands within a tax district having a resident owner or a resident agent are resident lands and where they are assessed as non-resident the defect is jurisdictional and hence not cured by subsequent legislation. (*Joslyn* v. *Rockwell*, 128 N. Y. 334; *Clark* v. *Kirkland*, 133 App. Div. 826; affd., 202 N. Y. 573; *People ex rel. Boenig* v. *Hegeman*, 220 id. 118; *People* v. *Faxon*, 111 Misc. 699; *People ex rel. Barnard* v. *Wemple*, 117 N. Y. 77.)

In *People ex rel. Barnard* v. *Wemple* (*supra*) the lands were assessed to a non-resident owner when they should have been assessed to a resident occupant. The Comptroller attempted to relevy the tax, basing his action on chapter 453 of the Laws of 1885. In holding that he was without authority to do this, the court said: " We are assured that the act is a curative statute. That may well be said of it as we have construed it, but it is impossible to cure what never had life enough to be sick. There never was any assessment against the occupants, and nothing to be cured." It seems to me, therefore, that the assessment in question was absolutely void.

The land in question was sold on the 12th of October, 1877, and according to the published notice of the Comptroller the last day for redemption expired on the 18th of October, 1879. There is a dispute here as to whether or not the lands were then occupied. The State contends that there was no such occupancy and concedes that no notice to redeem was given and that no proof of service thereof was recorded with the conveyance.

In determining whether or not the land was occupied it should be kept in mind that these premises were a part of a great tract of many thousands of acres owned by Wheeler & Claflin. There is abundant evidence in the record that from 1869 to 1889 Wheeler & Claflin, the defendant's predecessors in title, were operating tanneries, factories, and conducting lumbering operations upon the lands owned by them and comprising the tract in question. The

village of Wheelerville was located there. It had a tannery, then reputed to be the largest in the world, two saw mills, barns, stores, an agent's residence and buildings where about thirty employees were housed. The hamlet of Pine Lake had a saw mill, a superintendent's residence and living quarters for fifteen employees. There was a saw mill at Irving Pond, and lumber camps and scattered tenant houses here and there. The tract was being lumbered for hemlock bark for tanning. There was a lumber mill near Green Lake. At Wheelerville there was a residence occupied by the agent of the owner known as the White House and this building is still standing. Jonathan W. Wheeler was succeeded in the management of the Wheeler & Claflin interest by Levi Wheeler. The latter was succeeded by one Byron. Byron was later succeeded by Falonsby. The latter did not leave the town until the year 1891. One Hohler built a camp on subdivision 4 of Great Lot 61 (the lands in question) on the Long Level above Pine Lake in the fall of 1877. The date of the construction of the camp is fixed in his mind because of the fact that in February, 1877, twin boys were born to himself and his wife. Speaking of the camp he said: " it was a board camp and a board roof, a good warm camp; we stayed there all winter." This building had glass windows, stoves, tables and chairs and Hohler, his wife and five children resided there from the time of its construction until the spring of 1878. Obviously this camp must have been a substantial structure to comfortably house this witness, his wife and children in such a rigorous climate. These evidences of occupation were all open and notorious and it seems to me could not be ignored. To single out from this large tract a small parcel of 100 acres, separated from the remainder by no visible signs or boundaries and arbitrarily say that it was not occupied, especially where this will result in depriving the owner of valuable property rights, is most inequitable and unjust. The original assessment was founded on a mistake, was void in its inception and the resulting deed was a nullity. As a result of that sale the State acquired title to valuable property rights for a mere pittance. To say now that there is no proof that this particular part of the property was occupied during the redemption period within the meaning of section 134 of the Tax Law and that consequently the State was absolved from the necessity of notifying the occupant and affording him an opportunity to protect his interests, calls for a construction that I am not willing to adopt. Any other view would result in grave injustice and would simply mean that the landowner has no rights which are not extinguished at the door of the State Capitol.

Because no notice to redeem was served on the occupant and

no evidence of the service of such a notice was recorded with the conveyance, the deed given by the Comptroller to the People on April 5, 1880, based on the tax sale of 1877, is void. (*People* v. *Ladew*, 189 N. Y. 355; *Ostrander* v. *Reis*, 206 id. 448; *People* v. *Witherbee*, 199 App. Div. 272; *Clark* v. *Kirkland*, 133 id. 826; affd., 202 N. Y. 573; *People ex rel. Moynehan* v. *Gaus*, 134 App. Div. 80; affd., 198 N. Y. 501; *People ex rel. Lake Placid Co.* v. *Williams*, 145 App. Div. 34; appeal dismissed, 205 N. Y. 597; *Nichols* v. *Kellas*, 90 Misc. 432; affd., 173 App. Div. 923.) The notice must be given if only part of the land is occupied. (*Lucas* v. *McEnerna*, 19 Hun, 14.) It is of no consequence whether the land is occupied by the owner or some other person, or whether the other person's occupancy is under a claim of right. (*Comstock* v. *Beardsley*, 15 Wend. 348; *Bush* v. *Davison*, 16 id. 550.) The record of the deed, no evidence of the service of the notice having been recorded with it, is absolutely void and the deed must be regarded as if never placed on record. (*People* v. *Ladew, supra; Ostrander* v. *Reis, supra.*) In *People* v. *Witherbee* (*supra*), in speaking of this notice, Mr. Justice VAN KIRK said: " The occupant of the land could rely on the provisions of the statute requiring this notice to him and was not in jeopardy of losing his title under a tax sale, when the required notice had not been served upon him, and because he had not read carefully the publication of the Comptroller's notice and discovered this land, on which he had been living, was claimed by the State. No other or later statute has validated this void deed, or taken from the occupant claiming the land the right to this notice, or the protection it afforded him."

Counsel for the State very earnestly insists that the lands in question were not occupied and cites *People ex rel. Keyes* v. *Miller* (90 App. Div. 596) as a controlling authority. The facts in that case are readily distinguishable from the case at bar. There the Adirondack League Club owned a tract comprising 90,000 acres of Adirondack forest land, using it for a game preserve. The land was wild and uncultivated. The purpose for which it was used indicates that its occupancy was intermittent. Five hundred and seventy acres of this tract were sold as non-resident land for the non-payment of tax and no notice to redeem was served. The relator contended that the premises were not occupied and the court upheld this contention. There were some trails through the forest. A boat landing was built upon the shore of the lake. Notices were posted warning persons against trespassing. There were a few caretakers to look after the whole preserve. The tract sold was not separated by any visible boundaries. The occupation of this immense tract for a game preserve is vastly different from

the uses to which the premises in question were devoted. In this case manufacturing and lumbering operations were being conducted on an extensive scale. Many dwelling houses were erected and hundreds of employees housed therein. A village and numerous hamlets were spread over the territory. Resident owners or resident managers at all times were in charge of the various lines of develop- ment in progress. It may be said that the whole plot was under extensive cultivation.

The learned counsel for the People urges that the Statute of Limitations in section 132 of the Tax Law bars the defendant from the assertion of any claim of·title here. That section provides, in substance, that every conveyance executed by the Comptroller which has for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located " shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancella- tion, by reason of the payment of such taxes, or by reason of the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid, or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the Comptroller, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five, within one year from June fifteenth, eighteen hundred and ninety-six   *   *   *."

In construing this section in *People* v. *Witherbee* (*supra*) Mr. Jus- tice VAN KIRK said: " Provisions similar to section 132 have been in our statutes for many years and have been frequently under con- sideration of our courts. It has been held that the provisions may have effect as curative acts and as limitation statutes. As curative acts they avoid irregularities only. As a limitation they cannot be effective, except when the claimant has had an opportunity to assert his claim in court. It has not yet been held that one who is in actual possession as owner, and is enjoying all the property rights he could enjoy, if his lawful ownership had been adjudged in court, need bring an action or his right would be forfeited by statute."

Misc. 642]          Supreme Court, February, 1926.

This statute only attempts to cure defects up to the point of sale. The failure to give notice to the occupant arises subsequently to the sale and consequently is not affected by this statute. (*Ostrander* v. *Reis, supra.*) That the Statute of Limitations is only available to a defense and not to an attack is a principle firmly established in our law. It has been so construed and applied to cases of this character. The owner in possession, actual or constructive, may not be required to take notice of the running of the Statute of Limitations. (*Joslyn* v. *Rockwell, supra; People* v. *Turner,* 145 N. Y. 451; *Meigs* v. *Roberts,* 162 id. 371; *People* v. *Ladew, supra; People ex rel. McGuinness* v. *Lewis,* 127 App. Div. 107; *People* v. *Ladew,* 237 N. Y. 413.) When applied to past tax sales these provisions are not Statutes of Limitations but only curative acts. (*Byran* v. *McGurk,* 200 N. Y. 332.) In *People* v. *Ladew* (237 N. Y. 413) Judge ANDREWS, in discussing this subject, said: " Where a tax deed was given to the state under an illegal tax sale there were four possibilities. The owner or some one else under him may retain physical possession of the property. The land may be in possession of one claiming adversely to the owner. The state may acquire physical possession. The land may be vacant, in which case constructive possession, formerly attributed to the owner, may now be attributed to the state. In either of these last two cases the owner is wronged and he may sue in ejectment as in *Saranac Land & Timber Co.* v. *Roberts* (195 N. Y. 303) and the statute may fix a short period of limitation. This is far from the proposition that one actually in possession of the land, not disturbed in any way, with no act of ouster by the state, by the mere insertion of an advertisement that he may never see, loses in law the possession which in fact he still has — that to avoid subsequent ejection he may be compelled to defend his possession as to which there has been no interference."

The recording of the tax deed in the case at bar is of no avail. Recording such a deed without proof of the service of the notice on the occupant expressly required to be recorded with the conveyance is precisely the same as though it had never been placed on the record book. (*Matter of Morse,* 189 App. Div. 803; *People* v. *Inman,* 197 N. Y. 200.)

The publication of notice by the Comptroller during the month of December, 1894, that he was in possession of the premises in question confers no rights on the State. That notice referred to " wild, vacant and forest lands located in the county of Fulton, to which the state holds title." Lands occupied in good faith by one claiming to own them are not within the statute. Wild, vacant and forest lands are within the statute only when the State holds

title to them from a tax sale or otherwise. (*People* v. *Witherbee, supra.*) The premises described in the complaint in this action were neither wild nor vacant. Furthermore, the State evidently makes no claim that it is in possession of these lands because in its complaint it alleges that the defendant is in possession. The Comptroller's deed is inoperative even as to unoccupied and unimproved lands if such lands constitute a portion of the entire lot conveyed by the Comptroller and other portions of the lot are actually possessed or occupied and notice has not been given to the person or persons in such actual possession or occupancy. (*Nichols* v. *Kellas, supra.*)

It is the general rule of law, well settled by authority, that the plaintiff in ejectment must succeed on the strength of his own title, not on the weakness of the defense. (*People* v. *Inman, supra; Chamberlain* v. *Taylor*, 105 N. Y. 185.) The State has failed to establish any title to the lands in question.

The complaint should be dismissed on the merits and the tax sale and deed founded thereon declared null and void and said deed canceled of record.