Union and New Haven Trust Company, as Ancillary Executor of Ethel C. Nicol, Deceased, et al., Respondents, *v.* The People of the State of New York, Appellant.

Third Department, November 16, 1961.

*Louis J. Lefkowitz*, Attorney-General (*Emil Woldar, Paxton Blair* and *Edward R. Amend* of counsel), for appellant.

*Guernsey, Butts & Walsh* (*Charles A. Butts* and *James R. Brown, Jr.,* of counsel), for respondents.

HERLIHY, J. This is an appeal from a judgment in favor of the plaintiffs and against the defendant in an action instituted pursuant to article 15 of the Real Property Law to determine

the defendant's claim to certain real property and to adjudge the plaintiffs the lawful owner of the fee.

The issues concern the validity and effect of certain tax deeds through which the defendant State claims title and the further claim to title by the State, in the event the tax deeds are found invalid, by adverse possession.

The property consists of two parcels of land located in Ulster County, one of 790 acres and the other of 200 acres, both being part of a tract of 1,700 acres acquired in 1881 by the plaintiffs' predecessor in title, Caleb S. Maltby.

In 1882 the Ulster County Treasurer sold the 790-acre tract for alleged unpaid taxes at a tax sale and delivered the deed in 1884 to the defendant's predecessor in title and the 200 acres were sold for the same reason in 1895 and a deed delivered to the same party in 1897.

As to the 790 acres, the law in existence in 1882 (L. 1855, ch. 427, § 68) required that when the land sold was occupied it was necessary within the two-year redemption period to give notice of the proposed deed and the opportunity to redeem must be given to the occupants of the land. It is conceded as to this parcel of land that no such notice was given and if the record sustains the holding that the property was occupied at the time of the issuance of the deed, it follows the conveyance was void due to noncompliance with the then existing law. The trial court found as a fact, that the property was occupied by one Kelly, the caretaker for the titleholder Maltby.

The evidence showed that the land was mountainous and mainly woodland with the exception of that part where Kelly resided which was cultivated and improved. It further showed that in that locale and on the property owned by Maltby there had been a charcoal operation, consisting of six kilns, two of which were on the property in dispute. One witness—Loren Bell—testified that as a small boy he saw Kelly going by his house to the land here in dispute and based upon when Bell started going to school, the date was, as found by the trial court, between 1881 and 1884. There was substantial testimony that log roads were used from where Kelly lived back into the land here in dispute and that the lots were contiguous with the one upon which the main buildings were located. There was additional evidence that timber had been logged and sold from the entire tract (1,700 acres) during the period 1881 to 1884, all of which testimony was undisputed and amply sufficient to sustain the factual finding of the trial court that at the time the deed was issued and delivered in 1884 it was occupied by Kelly and therefore, required that notice be given to the occupant.

The above facts bring the matter of occupancy substantially within the case of *People* v. *Witherbee* (199 App. Div. 272).

In the *Witherbee* case (p. 276) the court found the following where one lot had a permanent residence thereon and the contiguous lot did not: " the two clearings were used for pasturing, for cutting hay and for raising crops, and the forest lands for cutting wood and lumber and making shingles for market, and this occupancy was continuous by those who were living in the aforesaid houses ".

The testimony established occupancy, which required a notice to the occupant, which was not given and sustains the finding of the trial court that the deed was void and that no title passed to defendant's predecessor in title.

In *Ostrander* v. *Reis* (206 N. Y. 448) the court said (pp. 452, 454) : " The right of a purchaser at the tax sale, or of a grantee, in the event of a failure to comply with the condition of the statute, could never ripen into a title.  *  *  *  It [service of notice to occupant] was a condition precedent, to be performed before the comptroller's deed could operate to transfer the title to the purchaser at the tax sale."

The further argument of estoppel as a defense and alluded to in the appellant's reply brief contending the parcel was separately assessed and taxed is of no moment as the question of occupancy determined by the trial court was a factual issue and not a matter of taxation. (*People* v. *Turner,* 117 N. Y. 227; *Cameron Estates* v. *Deering,* 308 N. Y. 24; *People* v. *Witherbee,* 199 App. Div. 272.)

It seems a fair inference from a reading of the record that the plaintiffs or their predecessor in title always paid the taxes on the whole tract (1,700 acres) which included the 790 acres here in question and it follows that there can be no taxes due and therefore the sale and the subsequent deed was a nullity and void. (See *Cameron Estates* v. *Deering, supra,* p. 31.)

The 200-acre tract was sold at a tax sale in 1895 and the deed delivered in 1897. This sale was conducted by the State Comptroller as distinguished from the Ulster County Treasurer in the 790-acre sale. In 1893 the tax law had been amended by chapter 711. Section 17 of the law provided for notice and recording of deeds and added a new provision as follows: " In case of failure to redeem within the time herein specified, the sale and conveyance thereof shall become absolute and the occupant and all other persons barred forever." In interpreting this new section, the Court of Appeals in *Mabie* v. *Fuller* (255 N. Y. 194, 201) said: " The provision embodied in the Tax Law for the first time by chapter 711, section 17, Laws of

1893, and carried into section 137, creates an absolute bar to the occupant's right to redeem, and makes the grantee's title absolute at the expiration of three years from the last day of the sale without the service by the grantee of any notice to redeem upon the occupant. * * * Everyone is presumed to know the Tax Law and to know that his land is being assessed and can be sold for non-payment of taxes and it is the duty of a landowner to see to it that the taxes upon his land are paid within the statutory time. If he fails for any reason the law still gives him in the case of occupied land three years from the last day of the sale within which to redeem. That is a reasonable time and if he fails to redeem within that time public policy requires that the grantee's title become absolute.''

The defendant State contends, the property being occupied, that the failure of the plaintiffs to redeem within the prescribed time makes its title absolute within the above statute. There can be no serious question that under the *Mabie* case (*supra*) there is no need to give notice to the occupant prior to the giving of the deed, and so the failure of notice as to the 200-acre parcel is of no advantage to the plaintiffs. However, the record shows, as the trial court held, that the 200-acre parcel was assessed as nonresident land, rather than as resident. We are satisfied that there is sufficient proof in the record to show that this parcel of land was actually occupied as a part of the prior mentioned 1,700-acre tract of land. Since the property was occupied, there was no right on the part of the taxing authority to carry this land as nonresident property. The *Mabie* case stated (p. 195) that '' The taxes on the farm for the year * * * were regularly assessed.'' In this case, the tax involved was obviously not regularly assessed because the tax law required that occupied land be assessed to the occupant thereof.

In the case of *Halsted* v. *Silberstein* (196 N. Y. 1) the Court of Appeals held that in regard to occupied land, the failure to assess occupied land as resident land rendered the deed jurisdictionally void. The court also held that the Statute of Limitations regarding the conclusiveness of a recorded tax deed did not start to run until the purchaser thereof entered into actual possession of the property, or performed some act sufficiently hostile to the possession of the prior possessor to give such prior possessor a cause of action against the holder under the tax deed. (See, also, *Sanders* v. *Downs*, 141 N. Y. 422, 424.)

In the comparatively recent case of *Cameron Estates* v. *Deering* (308 N. Y. 24) the Court of Appeals said (pp. 30, 31): '' There is a vast difference between a tax deed *voidable* for irregularity in the proceedings and a tax deed *void* because the proceedings were a nullity due to prior payment of the tax.

\* \* \* Nonpayment being of the essence for the invoking of tax sale proceedings \* \* \* there is a difference between giving effect to the presumption created by [statute] to a tax deed voidable for failure to comply with mandatory procedural requirements in a properly initiated proceeding [citing case] and a tax deed that is wholly void *because the right to initiate the proceeding never existed."* (Emphasis supplied.)

It was also said in the *Cameron Estates* case (*supra*) at page 31, that " Such recording was a nullity and did not set the statute running at all ".

Accordingly, we determine that the title of the defendant has not become absolute under the Tax Law of 1893.

As pointed out above, it has been held that in a case exactly like the present one, the Statute of Limitations does not start to run until the party injured by the tax sale has a right to apply for relief. (*Halsted* v. *Silberstein, supra.*) The State claims that there was an adverse possession as a result of tree blazing by one of its employees, but the record refutes such contention as the markings were not made for the purpose of designating the property lines of the tract here questioned. The cases relied upon by the defendant do not support its claim for adverse possession.

The State additionally argued that the Statute of Limitations has run because the land has become part of the Forest Preserve, but such is not the fact as it has been determined that the tax deed given was void by reason of the *Halsted* case (*supra*). The *Cameron Estates* case (*supra*) held that a void deed gives no title and that the recording thereof is a nullity and so the land cannot be deemed in actual possession of the State by reason of the transfer to the Forest Preserve. As a result it appears that the plaintiffs never had to raise the question of title at any time prior to this proceeding and so no Statute of Limitations could have run.

We are of the further opinion that the record and exhibits supported the inference that there was an intention to charge Maltby on the resident tax roll with 1,000 acres of land in the Town of Shandaken which of necessity included the 200-acre parcel here questioned and that Maltby paid the tax assessed. There was, therefore, no basis for the sale by the State in 1895 of this tract of land for unpaid taxes.

Since the deed to the 790-acre parcel was also void, the State has no valid claim to adverse possession under any Statute of Limitations. The judgment should be affirmed, with costs.

BERGAN, P. J., COON, GIBSON and REYNOLDS, JJ., concur.

Judgment affirmed, with costs to respondents.