THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* SPENCER G. PRIME and Others, Respondents.

Third Department, March 5, 1924.

Judgments — vacating judgment — judgment against State in action of ejectment — action in ejectment was based on tax title and defended on ground of failure to serve notice to redeem — map introduced in evidence by defendants showed house located on lot — motion to vacate on ground of fraud in preparing map becomes motion for new trial on ground of newly-discovered evidence when charge of fraud is withdrawn — new trial — no valid excuse shown by State for not discovering that map misrepresented location of house before former trial — State is guilty of laches — fact that house may not have been located on lot not necessarily determinative of defendants' rights — order denying motion to vacate judgment affirmed.

On a motion to vacate a judgment in favor of the defendants in an action of ejectment by the State, it appeared that the State based its claim to title on a tax sale made in 1877 and that the defendants claimed title because of the failure of the State to serve a notice to redeem within the time required by statute upon the occupants of the lot in question; that in the course of the trial a map was introduced showing that the house was located partially on the lot in question in order to show an actual residence thereon; that the motion to vacate the judgment is based on a claim that said map is inaccurate, that the house referred to was not located on the lot in question, and that the judgment was procured by fraud and deception. On appeal the State withdrew all charges of fraud and deception.

*Held*, that when the State withdrew its charge that the judgment was procured by fraud and deception, the motion to vacate the judgment became simply the ordinary motion for a new trial on the ground of newly-discovered evidence.

As a motion for a new trial on the ground of newly-discovered evidence it is not properly supported by any facts showing why the State did not discover the evidence before the former trial on the question of the location of the house, a question which was very important as bearing on the question of occupancy.

Furthermore, the State is guilty of laches, since the evidence was taken and concluded on April 29, 1920, and the case was not decided until March 1, 1921, and

during that interval no request was made by the State to reopen the case and for an opportunity to submit new evidence, and it did not make such a request until after an appeal had been taken to the Appellate Division and the judgment rendered in the action had been affirmed.

Moreover, a domicile on the *locus in quo* is not necessarily determinative of the occupancy of the lot in question, and since there is a doubt whether or not the plaintiff could succeed even though it was shown that the house was not located on the lot in question, the motion was properly denied.

APPEAL by the plaintiff, The People of the State of New York, from an order of the Supreme Court, made at the Montgomery Special Term and entered in the office of the clerk of the county of Essex on the 28th day of June, 1923, denying its motion to vacate the judgment entered in the above-entitled action.

*Carl Sherman, Attorney-General [Edward G. Griffin, Deputy Attorney-General,* of counsel], for the appellant.

*Patrick J. Tierney* and *George N. Ostrander,* for the respondents.

COCHRANE, P. J.:

Plaintiff brought this action in ejectment to recover possession of lot No. 5 of the Whiteface Mountain tract containing 1,531 acres in the town of North Elba. The case was tried before Mr. Justice VAN KIRK without a jury and a decision rendered in favor of the defendants. An appeal from that judgment was affirmed by this court on the opinion of Mr. Justice VAN KIRK, reported in *People* v. *Witherbee* (199 App. Div. 272). The facts are there stated more in detail than it is necessary to state them here. There was a joint ownership of lot No. 1 and lot No. 5. For a certain distance the southerly line of lot No. 5 and northerly line of lot No. 1 are identical. Lot No. 6 is immediately to the west of lot No. 1 and also adjoins lot No. 5 on the north. The People claim title to lot No. 5 by virtue of a tax sale in 1877 for the unpaid taxes of 1867 and 1869. The defendants claimed on the trial that such tax sale was void because no notice to redeem was given the occupants of the property as required by section 68 of chapter 427 of the Laws of 1855 which statute required notice to be served within two years from the expiration of the redemption period. This period expired in October, 1879 (Laws of 1855, chap. 427, § 50 *et seq.*), and it is not claimed that any notice was given under said section 68. Therefore, the defense was that the defendants' predecessors in title were in possession and occupancy of lots 1 and 5 in October, 1879. The finding of the trial court was that since prior to 1868 the predecessors in title of defendants " had been in occupation and possession " of the premises in question. At the trial plaintiff put in evidence only record evidence showing its tax title. The defendants put in evidence a certain map, Exhibit U, showing the lines of

the several lots and showing what is known as the " Notch House " located directly on the line between lots 1 and 6. The significance of the location of this house was to show an actual residence on lot 1 which as we have said had a joint ownership with lot 5. Evidence was introduced by the defendants of various witnesses showing that certain clearings had been made in lot 5 and that the same had been cultivated by or under the direction of those who were occupying the Notch House and one or two other houses in the immediate vicinity. The plaintiff claims now that the map, Exhibit U, was inaccurate in respect to the location of the Notch House and that said house was actually located 132 feet west of the line between lots 1 and 6. Plaintiff made this motion at Special Term to vacate said judgment because of the falsity of the map, specifying as the ground of its motion in the notice of motion that the judgment was procured by fraud and deception and that the defendants intentionally and knowingly invented false issues and that they knowingly and intentionally put in evidence Exhibit U showing and containing false and untrue representations. The notice of motion was limited to such ground except that there was the usual general demand " for such other and further relief as to the court may seem just and proper." In its brief on this appeal the plaintiff specifically withdraws all charges of moral delinquency or wrongdoing against all of the defendants and their attorneys and all other persons with the exception of the surveyor who made the said map. It is idle, however, to argue that he was guilty of fraud except in collusion with one of the defendants or attorneys. He is not shown to have had any personal interest in the litigation and naturally would not knowingly impose on the court a false map without some knowledge of that fact on the part of some defendant or attorney. The question of actual fraud has, therefore, been taken out of the case by the plaintiff. That was the only question which the notice of motion required the defendants to meet and the only question which apparently they attempted to meet as appears from the opposing affidavits. We yield, however, to the plaintiff's request that we consider the motion independently of the question of fraud. But eliminating that question the motion becomes simply the ordinary one for a new trial on the ground of newly-discovered evidence.

One of the prerequisites of such a motion is that the party seeking a new trial should present a proper excuse for not having discovered such evidence before the former trial. Such new evidence in this case consists of a correction of the map, Exhibit U, in respect to the location of the Notch House. The facts in respect thereto existed at the time of the former trial. The correct location

of the Notch House was important as bearing on the question of the occupancy of the premises in October, 1879. That was the real point of the defense. That question should have been anticipated by the plaintiff. It must have known that the defense would revolve around that point. It was practically the only issue at the trial. So far as appears no serious effort was made to meet that defense. There was no investigation of the facts pertinent thereto. No map was offered in evidence by the plaintiff. Its evidence was entirely of a documentary nature which was not and could not very well be controverted by the defendants. At the trial it seems to have been assumed that the Notch House as well as any other house mentioned by the witnesses was in lot No. 1. The plaintiff had at its disposal a force of assistants and engineers and the resources of the State and it would seem that its first care would have been to investigate and present the facts and circumstances bearing on the vital question of occupancy of the premises including the necessary map or maps to display the correct situation. Even if the plaintiff could be excused for going into the trial without the necessary preparation it clearly must have seen the importance of the defendants' evidence before the case was finally submitted and decided. The evidence was taken and concluded April 29, 1920. Attorneys were given until June 1, 1920, to submit briefs. Not until about March 1, 1921, ten months after the conclusion of the evidence, was the case decided. During that interval no request was made by the plaintiff to reopen the case and for an opportunity to submit new evidence. It took an appeal to this court from the judgment rendered against it and the appeal was argued and decided without any suggestion by the plaintiff that it had at its disposal evidence which might be material in overcoming the judgment. The action has been pending a long time. Plaintiff was the moving party. It has had its day in court. There should be at some time an end of litigation. Unless we are to be more liberal to the plaintiff in the application of the rules pertinent to a motion for a new trial on the ground of newly-discovered evidence than we would be to an individual this motion cannot prevail. We are not impressed with the argument that the State cannot be charged with laches. However that may be as a general proposition the plaintiff is here appealing to the discretionary power of the court to grant it the unusual favor of a new trial and there is no reason why the State on such a motion should not be held to the same rules which apply to private individuals.

Having reached this conclusion it becomes unnecessary to consider other questions raised by the plaintiff. It may be said, how-

ever, that assuming for the purposes of this motion the inaccuracy of the map, Exhibit U, as claimed by the plaintiff, it by no means follows therefrom that the plaintiff would succeed on another trial. The case of *People* v. *Ladew* (237 N. Y. 413), recently decided by the Court of Appeals, makes it clear that a domicile on the *locus in quo* is not necessarily essential on the question of occupancy at the expiration of the two-year redemption period following the tax sale. It seems clear that the evidence on such question of occupancy would raise doubts not easily dissipated and would present grounds of inference in respect to which reasonable minds might differ. We shall not attempt to prophesy what the result of that issue might be. It is sufficient that the probable success of the plaintiff in respect thereto is not so clear as to justify us in hazarding an opinion as to the outcome. There should be something more than an even chance that plaintiff will succeed on a new trial to justify granting the same, especially under the circumstances here disclosed.

The order should, therefore, be affirmed, with ten dollars costs and disbursements.

Order unanimously affirmed, with ten dollars costs and disbursements.