ROCKOWITZ CORSET AND BRASSIERE CORPORATION, Plaintiff, *v.* MADAME X COMPANY, INC., and Others, Defendants.*

Supreme Court, New York County, December 7, 1927.

**Trial — new trial — newly-discovered evidence — affidavits fail to show that purported evidence was not and could not have been discovered in exercise of reasonable diligence before trial — application denied.**

This motion to vacate a judgment for a permanent injunction restraining the defendants from infringing upon plaintiff's trade-mark, and for a new trial because of newly-discovered evidence, must be denied in the absence of anything showing that the purported evidence was not and could not have been discovered in the exercise of reasonable diligence before the trial, that it is material and not merely cumulative, and that on a new trial it would probably change the result.

MOTION by defendants to vacate judgment on the ground of fraud and perjury and concealment and suppression of evidence, and for a new trial on the ground of newly-discovered evidence; also a motion by defendants Weil to declare the action settled as to them by reason of an alleged stipulation.

*Neil P. Cullom,* for the defendants Madame X Company, Inc., Thompson-Barlow Co., Inc., Ralph S. Thompson, Wilbur R. Ruthrauff and Frederick B. Ryan, for the motion.

*Slade & Slade,* for the defendants The Weil Corset Company and Samuel J. Weil, for the motion.

*Carson & Conrad [Laughlin, Conrad, Bowers & Helpin* of counsel], for the plaintiff, opposed.

LEVY, J. This cause was tried in October, 1925, and a permanent injunction granted restraining the defendants from infringing upon plaintiff's trade-mark. An appeal was taken which is now pending

before the Appellate Division. Defendants move to vacate the judgment on the ground that it was obtained by fraud and perjury, and by concealment and suppression of evidence, and seek a new trial because of newly-discovered evidence. A separate motion is also made by defendants Weil to declare the action as to them settled by reason of an alleged stipulation in writing dated October 5, 1925, and signed by the attorneys for the plaintiff.

The main facts presented in support of the first or principal motion are contained in an affidavit of one Walter E. Pruzan and the exhibits thereto annexed. From these it appears that Pruzan was president, director and a large stockholder of the plaintiff from its organization in 1924 until August, 1926, when he sold his stock for $10,000 to one of plaintiff's attorneys; that prior to the inception of the litigation he consulted a firm of patent attorneys as to the alleged rights of Rocke and his associates in the trade-mark which is the subject of this controversy; that notwithstanding the adverse opinion of that firm he, nevertheless, in co-operation with Rocke, and one or more of plaintiff's attorneys who knew of such opinion, organized a corporation for the express purpose of instituting this suit; that witnesses were paid for testifying at the trial, and that the affiant himself, after appearing in court during the first few days of the trial " unannounced," was told by his attorneys to leave, so as to prevent the defendants from calling him as a witness.

The affidavits in opposition deny all the charges of conspiracy, and aver that Pruzan admitted to the attorneys for the plaintiff that he had sold his " documentary evidence " for $5,000, with a further promise of $10,000 in the event defendants succeeded. Pruzan in reply admits that he received that sum, but claims it was for services rendered in the investigation. Other facts referred to in the papers presented will be noted in the discussion of the evidence.

While the principal motion enumerates various grounds, such as suppression and concealment of evidence, fraud and subornation of perjury on the part of plaintiff's attorneys and its witnesses, and newly-discovered evidence, these are all essentially comprehended in the one last mentioned. The propriety of granting the motion must, therefore, be tested by the rules governing the discretion of the court in passing upon an application for a new trial on the ground of newly-discovered evidence. To succeed upon a motion of that character the moving party must show " that the evidence was not and could not have been discovered in the exercise of reasonable diligence before the trial, that it is material and not *merely* cumulative or of an impeaching character in the

sense of affecting credibility only as distinguished from' having probative force by showing a different state of facts and that on a new trial it would probably change the result." (*Frohlich* v. *Zeltzer*, 185 App. Div. 103, 109. See, also, *Klinger* v. *Markowitz*, 54 App. Div. 299; *Keister* v. *Rankin*, 34 id. 288.) If we apply these tests we must eliminate much of the matter in the affidavits which deals with the analysis of the testimony of plaintiff's chief witness Rocke, in attempted proof of perjury on his part. Such an exposition may properly be the subject of argument before the Appellate Division but is not really relevant here. The matters which may be regarded as pertinent in the consideration of this motion are the allegations submitted by Pruzan in relation to the alleged conspiracy to bring this law suit, the organization of a corporation without any intent ever to engage in business, and the complete lack of activity on the part of the company in the manufacture and sale of any merchandise with or without the Madame X trade-mark.

The affidavit of Mr. Anderson to the effect that he rendered an opinion before the action was commenced that plaintiff had no title in the trade-mark, is obviously of no value. It seems to be the view of a lawyer based upon a presentation of an inadequate state of facts, and in no event can it be binding upon the court. As to the accusations that witnesses were "purchased," these seem to be without foundation. In characterizing the situation presented by Pruzan in support of the motion we may aptly employ the language of Mr. Justice Miller in *Herrman* v. *Altman* (139 App. Div. 930): "Such evidence may be said to be newly 'created,' but cannot appropriately be termed newly 'discovered,' and obviously does not meet the requirements prescribed for the granting of new trials on the ground of newly-discovered evidence. If the practice of granting new trials upon such evidence were adopted, litigations would become interminable. The defeated party would only need to interview his adversary to get a new trial."

Pruzan admits that for six months prior to his delivery of the documentary evidence to defendants he was employed by them to render service in the investigation, but states he was paid $5,000 for this and not for the delivery of the papers. Accepting this disingenuous explanation at its face value, we must nevertheless view it with great suspicion, particularly in the light of his having become, quite conveniently, an investigator in the service of plaintiff's opponents for his self-aggrandizement. At any rate "it could hardly be claimed that the evidence was of such a character or came from such a source that there would be a reasonable certainty of its changing the result on another trial.' '(*Brown* v.

*Newell,* 132 App. Div. 548, 552.)   True it is that upon such an application as this, the determination of the credibility of a given witness is usually to be deferred until the occurrence of the actual trial.   But, as is said in *Hagen* v. *N. Y. Central & H. R. R. R. Co.* (100 App. Div. 218): "We cannot disregard the reputation and character of the witnesses who are desired to be brought to the rescue on another trial."

Pruzan has undoubtedly placed himself in a position of confessing to a conspiracy to mulct the defendants even prior to the inception of the litigation.   His change of heart came more than one year after the trial, and after he had parted with his interest in the plaintiff.   The statement in the opposing affidavits that the purchase of his stock by a client of plaintiff's attorneys was precipitated by Pruzan's threats that he would otherwise sell to defendants may well be believed.   The sole material portion of his story which might tend to affect the result — that plaintiff made no use of the trade-mark and did no business — cannot, in the light of his apparent lack of scruple, be looked upon as a factor which would probably change the result.   There should be something more than an even chance that the party seeking a new trial will succeed — which is certainly not present here — to justify the granting of it.   (*People* v. *Prime,* 208 App. Div. 445.)

The charge that Pruzan was kept from the trial as a witness also seems to be quite unsubstantiated.   At the time of the trial he was heart, soul and purse with the plaintiff.   It is not at all likely that defendants at that stage would have obtained any assistance from him, for he was hostile.   Even granting that plaintiff did actually secrete Pruzan from the defendants at the trial, the latter offer no excuse for their failure to secure his deposition. In *Davenport* v. *Dewsnap* (168 N. Y. Supp. 613) the Appellate Term, speaking through Mr. Justice FINCH, refused an application for a new trial under similar circumstances, where the moving party knew before trial that the alleged absent witness could be used as such, where the record did not show any application for an adjournment on the ground of his absence, where no attempt was made to obtain his testimony by deposition or otherwise, even though it was claimed by the moving party that he was ignorant of the witness' whereabouts.

Defendants have failed to show due diligence and have not convinced me that the proposed evidence will probably change the result of the trial.   It is unfortunate that their attorneys have chosen to attack the integrity and good faith of the highly reputable members of the bar who represent plaintiff.   There is no foundation for the charges except the testimony of a person,

utterly unworthy of credence. Indeed, a measure of comfort may be found in the reference to the attorney for the prir cipal defendant whose conduct in another litigation has been severely rebuked by the Appellate Division in this department in *Pelzer* v. *Perry* (203 App. Div. 58, 60): " We regret to note that the counsel for the respondent in each of the four briefs which he has filed on the various appeals in this case has adverted to a matter that formed no part of the record on these appeals, and used intemperate and impertinent language, intended to reflect upon one of the justices. Because of this matter being in the briefs, the four briefs will be ordered stricken from the files, and the counsel is admonished that a repetition of the offense will call for more drastic action."

The second motion made by the defendants Weil is met by the objection of gross laches. In this there seems to be some merit. For two years these defendants were aware of the existence of the alleged stipulation, but unfortunately made not the slightest move to enforce it. Not until the principal motion was initiated did they see fit to advance. It may well be that they have a perfectly valid grievance, but as no issue in respect to it was tendered upon the trial, it is exceedingly difficult, if not entirely impossible, to determine whether the conditions prescribed in the so-called stipulation were actually fully performed. It may equally well be that their former attorney honestly misunderstood the effect of his arrangements with plaintiff's counsel, but even as to this it is impossible to speak with finality. A consideration, however, of all the circumstances disclosed by the papers makes imperative the denial of both motions.

The motions are, therefore, denied.