Donald S. Taylor, J.
The movants who are claimants in a proceeding instituted by the board of water supply of the City of New York to acquire certain rights and easements against their properties which abut the Neversink River in the county of Sullivan seek a new trial of their claims upon the ground of newly discovered evidence. The rights and easements in perpetuity which were acquired included the right to divert and impound all or any part of the waters of the Neversink River and its tributary watershed originating above the Neversink Dam as its municipal needs required together with the right *42 from time to time to release and discharge into the river below the dam waters impounded in the Never sink Reservoir. Certain mandatory release flow provisions were incorporated in the appointing order of the court by stipulation.
Upon the trials of the claims the movants contended that the river’s natural bathing and swimming facilities had been destroyed by the diversion and that to make them whole required awards sufficient to construct and maintain artificial swimming pools on their respective properties. Their thesis was that the release of only 10,000,000 gallons of water per" day from the reservoir which was the maximum mandatory requirement during the summer months fixed by the appointing order so reduced the flow of the stream from its former volume that it was rendered unsuitable for recreational bathing and swimming purposes. This was not accomplished solely, they asserted; by the exiguity of the amount of water' released but also by a resulting increase in its temperature which induced ah excessive growth of slimy and malodorous aquatic vegetation and a decrease in the river’s velocity which produced silt and sedimentation along its bottom. The court has confirmed the report of the commissioners of appraisal over the protests of "the claimants.
Some months after the trials were completed the claimants discovered evidence that during the summer of 1954 the City of New York daily was releasing from the lower levels- of its reservoir through a valve located near the base of its dam quantities of water accumulated during the winter of' 1953-1954 in excess of those which the court order directed, the temperature of which in the vicinity of their premises as read in late July and early August of this year by a professional engineer employed by them ranged from a low of 47 degrees Fahrenheit' to a high of 64 degrees Fahrenheit thereby rendering the river too cold for normal bathing and swimming. This newly discovered evidence is said to have come to light for the first time when the attorney for the claimants learned from the testimony of a witness for the City of New York in a subsequent trial of a riparian claim that 40,000,000 gallons of water per day were being discharged from the Never sink Reservoir" in order to comply with a decision of the United States Supreme Court handed down in the spring of 1954 which required releases of water from New York City reservoirs in excess of the amounts prescribed by the orders in its condemnation proceedings when" the water level of the Delaware River at Montague, New Jersey, fell below a certain point. It is upon this evidence that they urge retrials of their claims.
*43 ‘‘ Motions for a new trial upon the ground of newly-discovered evidence are addressed very largely to the discretion of the court. Nevertheless, the freedom of the court to act according to its own judgment must be exercised within the well-established rules controlling such applications.” (Collins v. Central Trust Co. of Rochester, 226 App. Div. 486, 487.)
“It is well settled that to entitle a party to a new trial on the ground of newly-discovered evidence, it must appear that such, evidence could not, with reasonable diligence, have been obtained for use on the first trial. (People v. Prime, 208 App. Div. 445, 448; Grafton v. Ball, 164 id. 70; Hagen v. N. Y. C. & H. R. R. R. Co., 100 id. 218; Bridenbecker v. Bridenbecker, 75 id. 6; Kring v. N. Y. C. & H. R. R. R. Co., 45 id. 373; Thompson v. Welde, 27 id. 186; Sayer v. King, 21 id. 624; Smith v. Rentz, 73 Hun, 195.) ” (Collins v. Central Trust Co. of Rochester, supra, pp. 487-488.)
The petition herein alleged that the board of water supply caused a survey to be made and a map or plan to be prepared and filed of the parcels of real estate which were to be affected by the acquisition of the rights and easements. (Administrative Code of City of New York, §§ K41-5.0, K41-6.0.) Paragraph XIY thereof read as follows: “ That the Petitioner by this proceeding seeks to become vested with the right and easement in perpetuity in and against all the parcels of real estate herein described and shown on the aforesaid map filed herein, to divert all, or any part, of the waters of the Neversink River and its tributary watershed originating above the aforesaid Neversink Dam, either continuously or from time to time, and in such quantities as the operating needs of the City of New York as determined by it, may require; together with the right from time to time to release and discharge into the Neversink River below the Neversink Dam, waters impounded in the Neversink Reservoir.” (Emphasis supplied; Administrative Code of City of New York, § K41-11.0.) It also referred by its averments to the provisions of a decree of the United States Supreme Court which limited the diversion of water from the tributaries of the Delaware River to the New York City water supply in excess of the amounts therein specified. The court order granted thereon appointed three commissioners of appraisal ‘ ‘ to ascertain and determine the compensation to be made to the owners of and all persons interested in the real estate laid down on said map and described in said petition in and against the parcels in which the City of New York proposes to acquire the right and easement in perpetuity to divert all or any part of the waters of the Neversink River and its tributary watershed *44 originating above the Neversink Dam, either continuously or from time to time and in such quantities as the operating needs of the City of New York, as determined by it, may require, and the further right from time to time to release and, discharge into the Neversink River below the Neversink Bam, waters impounded in the Neversink Reservoir; * * *,” (Emphasis supplied; Administrative Code of City of New York, § K41-9.0.) It further provided “ that upon the basis of the compromise ” ' (to which the order referred in its recitals) “ the City of New York, be and it is hereby directed to release and discharge waters into the Neversink River below the Neversink Dam, in the amount of three million gallons daily, from November 1st to and including April 7th, and ten million gallons daily from April 8th to and including October 31st, in each year.”
The moving affidavits do not allege that the claimants were not entirely familiar with the nature and extent of the perpetual rights and easements against their properties which the City of New York intended to and did acquire in its condemnation proceeding. One of them was the right to release and discharge into the Neversink River below the dam site the waters thereby impounded at such times, from such levels and in such gallonage as its discretion dictated. The claimants also knew that the release of the water by the city would be made near the bottom of the dam and not from its top and that waters so discharged would be of lower temperature than that at or near its surface. Possessed as they were of such information it does not appear that they made any effort before the trials of their claims to learn what the effect of the exercise of the municipality’s release rights beyond those required by the appointing order would be on their natural bathing and swimming facilities. In the one day in court which the law affords, the claimants were content to rest their claims on evidence of the result that only a partial exercise of the city’s known rights would produce. They have not demonstrated their right under the pertinent rules to a second day.
There is another reason which, in my view, requires the denial of the motion. "Whether the newly discovered evidence is of such a nature and is so positive and convincing that it would in all probability produce a different result if new trials were had is open to serious doubt. It is not enough simply to show that a different conclusion might be reached on another trial. (Tarbell v. Finnigan, 55 App. Div. 629, 631.) The true measure of damages for injury to lower riparian owners by a permanent diversion of the water is the difference in value of the property before and after diversion. (Matter of City of New York *45 [Rochaway Beach], 288 N. Y. 75; Matter of Board of Water Supply of City of New York, 277 N. Y. 452; County of Erie v. Fridenberg, 221 N. Y. 389; South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301; Town of Fallsburgh v. Silverman, 260 App. Div. 532, affd. 286 N. Y. 594; Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583; Adirondack Power & Light Corp. v. Evans, 226 App. Div. 490.) The cost of replacing natural facilities with artificial ones is not necessarily that equivalent as the court indicated on the claimants’ motion to reject the awards. It was urged on the original trials that the natural bathing and swimming facilities of the river had been totally destroyed but for different and antithetic reasons. It is not demonstrated that the awards which the commissioners of appraisal made were not in full compensation for the destruction of such facilities which they found to have existed prior to the diversion.
The motion is denied, without costs.
Submit order.
(On reargument, August 17,1955.)
The claimants move (a) for leave to reargue their original motion for new trials on the ground of alleged newly discovered evidence which was denied and on reargument for the relief therein sought; (b) to renew the original motion on the basis of additional facts which allegedly have occurred since its disposition and (c) to resettle the order of this court dated December 10, 1954, and filed in the Sullivan County clerk’s office on December 15, 1954, to recite all the affidavits which were used in connection with the motion for that order.
The petitioner does not oppose the granting of the relief sought under subdivision (c) above and this branch of claimants’ motion is granted. Leave to reargue the original motion is granted. In its consideration and denial, the court did not misapprehend the facts or otherwise mistakenly arrive at its determination. The original decision is adhered to. (Marine Nat. Bank v. National City Bank, 59 N. Y. 67; Ellis v. Central Hanover Bank & Trust Co., 198 Misc. 912; New York Central R. R. Co. v. Beacon Milling Co., 184 Misc. 187; Matter of Hooker, 173 Misc. 515.) The renewed motion is denied. The probability of changed results on retrials of these claims is not demonstrated. (Padgett v. Bates, 284 App. Div. 1004; Travitzky v. Schamroth, 277 App. Div. 1018; Collins v. Central Trust Co. of Rochester, 226 App. Div. 486, 488-489.)
Submit order accordingly.